[Civ. No. 40108. First Dist., Div. Two. Oct. 19, 1981.]

M RESTAURANTS, INC., Plaintiff and Respondent, v.
SAN FRANCISCO LOCAL JOINT EXECUTIVE BOARD OF
CULINARY WORKERS, BARTENDERS, HOTEL, MOTEL AND
CLUB SERVICE WORKERS AND DINING ROOM
EMPLOYEES UNION, Local No. 9 et al.,
Defendants and Appellants.

668

COUNSEL

Davis, Cowell & Bowe, Alan C. Davis and Geoffrey V. White for Defendants and Appellants.

Charles P. Scully and Donald C. Carroll as Amici Curiae on behalf of Defendants and Appellants.

Severson, Werson, Berke & Melchior, Robert V. Magor, William W. Wertz and Jan T. Chilton for Plaintiff and Respondent.

Hill, Farrer & Burrill, Stanley E. Tobin and James G. Johnson as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**TAYLOR, P. J.\***—The case at bench concerns the issue of whether a preliminary injunction enjoining defendant unions from threatening and/or committing acts of intimidation and violence and limiting the numbers and spacing of picketers issued prior to the Moscone Bill (Code Civ. Proc.,[1] § 527.3) should now be dissolved. We filed an opinion in which we concluded that the trial court's order upholding the preliminary injunction should be affirmed. The Supreme Court granted a hearing and then retransferred the cause to this court "with directions to refile its opinion with appropriate discussion of *Kaplan's Fruit &*

---

\*The original opinion in this case was authored by Kane, J., subsequently retired, and was concurred in by Taylor, P. J. and Rouse, J. The members of the panel remaining on the court, that is, Taylor, P. J. and Rouse, J., have supplemented the original opinion by commenting on the case of *Kaplan's Fruit & Produce Co. v. Superior Court* (1979) 26 Cal.3d 60, etc., as directed by the Supreme Court, and file this supplemented opinion per curiam.

[1] Unless otherwise indicated, all references will be to the California Code of Civil Procedure.

*Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60 [160 Cal.Rptr. 745, 603 P.2d 1341]." We understand our jurisdiction upon retransfer to be limited to execution of the Supreme Court's direction (cf. *Nichols* v. *Canoga Industries* (1978) 83 Cal.App.3d 956, 958 [148 Cal.Rptr. 459]); hence we reject the unions' contention that, in effect, we should now reconsider our previous approval of those parts of the preliminary injunction which limited the numbers and spacing of pickets: As the unions correctly point out, the numbers and spacing issue was not reached in *Kaplan's Fruit & Produce, supra,* 26 Cal.3d 60. We affirm the trial court's order upholding the preliminary injunction.[2]

M Restaurants, Inc. (hereinafter Mandarin or respondent) operates a restaurant and cocktail lounge in San Francisco. In 1974, San Francisco Local Joint Executive Board of Culinary Workers, Bartenders, Hotel, Motel and Club Service Workers and Dining Room Employees Union, Local No. 9 (hereinafter unions or appellants) became the union representative of Mandarin's employees pursuant to a representation election which followed a lengthy and stormy organizational drive.

During the organizational period, Mandarin promulgated a number of work rules and engaged in conduct designed to discourage the unions' organizational efforts. A broad "no solicitation" rule was invoked. Mandarin promised wage increases, discharged union adherents and threatened employees to discourage union activity. This conduct was found to be unlawful by the National Labor Relations Board (*M Restaurants, Inc.* v. *San Francisco Local Joint Executive Board* (1975) 221 NLRB 264).

In the meantime, appellants began a picket line to protest the aforementioned "unfair labor practices" of Mandarin. However, on January 14, 1975, the unions intensified their picketing efforts, stationing between 50 and 100 persons at the various entrances to the restaurant. The pickets circled the restaurant entrances and blocked the doorways to such an extent that in order to enter, potential customers had to "wedge" their way through the pickets.

---

[2]We have made essentially clerical corrections to update our citations to the Supreme Court's decision in *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters.* Since the factual matters in this cause were submitted on affidavits and declarations under penalty of perjury, our statement of factual matters is likewise based thereon, together with the reasonable inferences drawn therefrom in the light most favorable to respondent.

In addition, each time a potential customer attempted to enter the restaurant, the pickets jeered and booed at him and attempted to force handbills upon him. However, when the potential customer seemed to change his mind and not enter, the pickets would cheer loudly. Moreover, the pickets told prospective customers: "They have cockroaches in their food," "Don't eat chop suey food tonight, eat spaghetti," and "Don't patronize THE MANDARIN, they are using slave labor." Such statements and jeering could be heard throughout Ghirardelli Square and inside the restaurant.

Furthermore, on January 19, 1975, Mandarin's president was accosted by a man who said he represented the unions and told her, "God damn you. Don't you know this is a Union town. If you don't join the Union, we'll kill you." The same man also told respondent's secretary-treasurer, "God damn it, you son of a bitch, you'd better talk with us."

On that same day, Mandarin's manager also received several anonymous, threatening phone calls. During the first, the caller stated: "This is only the beginning, this is a Mafia town." In a later call: "Listen carefully, you are dealing with the Mafia. You better put the Union in before Wednesday, otherwise we are going to kill you. You son of a bitch, we are going to fuck your place up tomorrow." In the final call, the same voice stated: "Wednesday, my dear fellow," while a voice in the background repeated: "Wednesday, Wednesday, Wednesday."

A complaint was then filed on behalf of Mandarin, seeking injunctive relief to prevent the unions from engaging in improper or illegal picketing of its premises. On January 24, 1975, the trial court issued a temporary restraining order. A preliminary injunction was later issued on February 7, 1975, enjoining the unions from blocking access or deliveries to the restaurant, threatening and/or committing acts of intimidation and physical violence on anyone working for or desiring to do business with the restaurant, and disturbing the peace. The injunction also limited the number and spacing of picketers, prohibiting any persons in excess of three at each entrance any closer than 10 feet from the entrance, with pickets 15 feet apart and moving.

Thereafter, the unions challenged the issuance of the injunction, applying to this court for a peremptory writ of mandate. Division Four of this court denied the writ,[3] holding that the trial court did not abuse its

---

[3] The court did, however, modify the preliminary injunction by deleting paragraph nine as amounting to an overbroad restraint on free speech. Paragraph nine provided

discretion in finding a sufficient threat to public safety and order. This court also found that the restrictions on the number and placement of picketers was not unconstitutional.

The unions' petition for hearing by the California Supreme Court was denied on September 4, 1975.

On January 23, 1976, the unions again filed a motion in the trial court to dissolve the preliminary injunction on the ground that the enactment of section 527.3 removed equitable jurisdiction from the court to issue or enforce the injunction. No additional evidence regarding the facts of the case was submitted by the unions. However, Mandarin filed an additional declaration showing that the unions had violated the injunction on January 24, 1976. By minute order of May 27, 1976, the trial court denied the motion to dissolve the preliminary injunction.

Unions now seek review of the trial court's order on the ground that the injunction prohibits conduct made legal and nonenjoinable by section 527.3. While the issue presented primarily concerns statutory interpretation, Mandarin has also raised questions regarding the purported retroactive application of the statute to the present controversy as well as the constitutionality of the statute itself. Therefore, our inquiry must first focus on these two threshold questions before examining the central issue.

■ It is a well-settled principle that every statute will be construed to operate prospectively, absent clear statutory language otherwise. This principle applies to legislation which limits a court's jurisdiction; the statute will not be applied to pending litigation unless it is expressly stated to have retroactive effect (*Berg* v. *Traeger* (1930) 210 Cal. 323, 325 [292 P. 495]; *Dahlstet* v. *Dahlstet* (1969) 272 Cal.App.2d 174, 179 [77 Cal.Rptr. 45]).

■ While this principle holds true with regard to pending litigation, it is also an established rule of law that on appeal from a judgment granting or denying *injunctions*, the law applied is that which is *current* at the time of the judgment in the appellate court (*Cal-Dak Co.* v. *Sav-On Drugs, Inc.* (1953) 40 Cal.2d 492, 496-497 [254 P.2d 497]; *Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13, 18 [81 Cal.

"Shouting into the restaurant or at restaurant customers or prospective restaurant customers and shouting reflections upon Plaintiff's food, cooking or service."

Rptr. 440]). The reason underlying the application of current law is due to the nature of the preliminary injunction itself.

■ The preliminary injunction is a decree continuing in nature, directed at future events. It creates no right, but merely assumes to protect a right from unlawful and injurious interference (*Union Interchange, Inc.* v. *Savage* (1959) 52 Cal.2d 601, 604 [342 P.2d 249]; *Sontag Chain Stores Co.* v. *Superior Court* (1941) 18 Cal.2d 92, 94 [113 P.2d 689]). The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761]). Therefore, when it is shown that "'there has been a change in the controlling facts upon which the injunction rested, or *the law has been changed, modified or extended*, or where there the ends of justice would be served by modification,'" the trial court has the inherent power to modify or vacate the injunction (*Union Interchange, Inc.* v. *Savage, supra*, 52 Cal.2d at p. 604; *Sontag Chain Stores Co.* v. *Superior Court, supra*, 18 Cal.2d at pp. 95-96; italics added).

■ Thus, because relief by injunction operates in futuro, section 527.3, which was signed into law and became effective on January 1, 1976, is applicable to the present controversy.

Next, we examine the constitutionality of the statute.[4] Section 527.3 is essentially eclectic in nature. It is patterned after the Norris-LaGuardia Act, adopting its purpose as well as incorporating its statutory definitions of a labor dispute (29 U.S.C. §§ 101-115). In addition, section 527.3 parallels the language of the other state anti-injunction statutes, e.g., New Jersey and Wisconsin.[5] Therefore, the constitutionality of these statutes is germane to our examination of the constitutionality of section 527.3.

To remedy the abusive use of the injunction in labor disputes, the Norris-LaGuardia Act was enacted in 1932. The act severely limited the jurisdiction of the *federal courts* to issue injunctions in labor dis-

---

[4]Though the issue of constitutionality was not raised in the trial court, it is proper to consider the question on review where it is of sufficient public import and necessary to dispose of the appeal (*Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal. App.3d 1, 6 [97 Cal.Rptr. 431]).

[5]Section 527.3, subdivision (a), follows almost exactly the language in a similar New Jersey statute (cf. Wis. Stat. Ann., §§ 103.53, subds. (1)(e), (1)(g), (2); 103.55).

putes except where fraud or violence was present. It set out a comprehensive list of types of conduct involved in labor disputes not subject to injunctions (29 U.S.C. § 104), and placed procedural limitations with regard to the issuance, breadth and enforcement of injunctions.

Though the statute was aimed to restrict the federal equity power, it was justified constitutionally on the basis of Congress' power under article III, section 1, to define and limit the jurisdiction of the federal court (*Trainmen* v. *Toledo, P. & W. R. Co.* (1944) 321 U.S. 50, 58 [88 L.Ed. 534, 539, 64 S.Ct. 413, 150 A.L.R. 810]; *Lauf* v. *E. G. Shinner & Co.* (1938) 303 U.S. 323, 330 [82 L.Ed. 872, 877-878, 58 S.Ct. 578]). The act merely restricted and limited equitable remedies and did not make substantive changes in the law (Frankfurter & Greene, The Labor Injunction (1930) p. 215).

In the wake of the Norris-LaGuardia Act, many states enacted anti-injunction statutes. Wisconsin enacted such a statute which was constitutionally tested in *Senn* v. *Tile Layers Union* (1937) 301 U.S. 468 [81 L.Ed. 1229, 57 S.Ct. 857]. The court ruled in *Senn* that the Wisconsin anti-injunction statute did not violate the Fourteenth Amendment. In doing so, the court stated: "Clearly the means which the statute authorizes—*Picketing and publicity—are not prohibited by the Fourteenth Amendment. Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution. The State may, in the exercise of its police power, regulate the methods and means of publicity as well as the use of public streets. If the end sought by the unions is not forbidden by the Federal Constitution the State may authorize working men to seek to attain it by combining as pickets, just as it permits capitalists and employers to combine in other ways to attain their desired economic ends.* The Legislature of Wisconsin has declared that 'peaceful picketing and patrolling' on the public streets and places shall be permissible 'whether engaged in singly or in numbers' provided this is done 'without intimidation or coercion' and free from 'fraud, violence, breach of the peace or threat thereof.' *The statute provides that the picketing must be peaceful; and that term as used implies not only absence of violence but absence of any unlawful act. It precludes the intimidation of customers. It precludes any form of physical obstruction or interference with the plaintiff's business.* It authorizes giving publicity to the existence of the dispute 'whether by advertising, patrolling any public streets or places where any person or persons may lawfully be'; but precludes misrepresentation

of the facts of the controversy. And it declares that 'nothing herein shall be construed to legalize a secondary boycott.' See *Duplex Printing Co. v. Deering*, 254 U.S. 443, 466. *Inherently, the means authorized are clearly unobjectionable. In declaring such picketing permissible Wisconsin has put this means of publicity on a par with advertisements in the press.*" (301 U.S. at pp. 478-479 [81 L.Ed. at p. 1236]; italics added.)

Furthermore, in finding the Wisconsin statute constitutional, the court distinguished its ruling in *Truax* v. *Corrigan* (1921) 257 U.S. 312 [66 L.Ed. 254, 42 S.Ct. 124, 27 A.L.R. 375]. In *Truax*, the Arizona anti-injunction statute was held to be violative of the Fourteenth Amendment, because the statute was found to legalize not only peaceful picketing but also unlawful conduct allowing libelous statements, threats and acts of intimidation. In contrast, the Wisconsin statute authorized only peaceful and lawful conduct.

In view of this precedent, we examine the constitutionality of section 527.3. However, in doing so, we must consider the long established judicial policy of upholding the constitutionality of a particular enactment if it is possible to do so by making a fair and reasonable interpretation of the enactment (*County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 801 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555]; *Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553, 558 [11 Cal.Rptr. 758, 360 P.2d 334]; *Layton* v. *Merit System Commission* (1976) 60 Cal.App.3d 58, 64 [131 Cal.Rptr. 318]).

■ Pursuant to this imperative, section 527.3 can be accorded a construction consistent with constitutional requirements. In enacting the provision, the Legislature declared that its purpose was to promote the rights of workers and to prevent unnecessary interference by the courts in labor disputes (subd. (a)). While recognizing the abusive use of injunctions in labor disputes, the statute strictly limits the jurisdiction of the courts to issue injunctions. It delineates various activities as legal and therefore nonenjoinable. However, the statute provides that it is to be strictly construed in accordance with the existing law governing labor disputes (subd. (a)).

The activities now authorized by the statute are similar to those contained in section 4 of the Norris-LaGuardia Act and the Wisconsin statute. Thus, section 527.3 sets forth two categories of activities in labor disputes which are to be regulated. The first category—those acts

which the statute declares "shall be legal"—is provided in subdivision (b): "(1) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, or by any other method *not involving fraud, violence or breach of the peace.* [¶] (2) Peaceful picketing or patrolling involving any labor dispute, whether engaged in singly or in numbers. [¶] (3) Assembling peaceably to do any of the acts specified in paragraphs (1) and (2) or to promote lawful interests" (italics added).

The second category, those actions which remain unlawful, is set forth in subdivision (e): "It is not the intent of this section to permit conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity."

As in *Senn v. Tile Layers Union, supra,* 301 U.S. 468, the means declared legal are constitutionally unobjectionable. It denies injunctive relief to conduct which is peaceful and lawful. This denial is authorized by the protections accorded to this form of expression by the First Amendment to the United States Constitution (*United Farm Workers Organizing Committee v. Superior Court* (1971) 4 Cal.3d 556, 567 [94 Cal.Rptr. 263, 483 P.2d 1215]; *California Retail Liquor Dealers Institute v. United Farm Workers* (1976) 57 Cal.App.3d 606, 610 [129 Cal.Rptr. 407]).

Furthermore, the means authorized by the statute are not prohibited by the Fourteenth Amendment (*Senn v. Tile Layers Union, supra,* 301 U.S. at p. 478 [81 L.Ed. at p. 1236]). There is no denial of due process where the state declares certain purposes of picketing involving a labor dispute to be lawful (*Teamsters Union v. Hanke* (1950) 339 U.S. 470 [94 L.Ed. 995, 70 S.Ct. 773, 13 A.L.R.2d 631], picketing independent contractor for union shop, injunction held unconstitutional; *Senn v. Tile Layers Union, supra,* 301 U.S., p. 481 [81 L.Ed., pp. 1237-1238]).

For similar reasons, section 527.3 does not deny equal protection. The classification created by the statute bears a rational relationship to its purpose as enunciated in section 527.3, subdivision (a) (*Williamson v. Lee Optical Co.* (1955) 348 U.S. 483, 488 [99 L.Ed. 563, 572, 75 S.Ct. 461]; *Weber v. City Council* (1973) 9 Cal.3d 950, 958 [109 Cal.Rptr.

.553, 513 P.2d 601]; *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505]).

In addition, the statute substantially codifies California case law. Under state decisional law, publicity concerning the existence of, or the facts involved in, a labor dispute by means of picketing has been protected where conducted peacefully, truthfully, and in pursuit of legitimate objectives (*In re Porterfield* (1946) 28 Cal.2d 91, 102-105 [168 P.2d 706, 167 A.L.R. 675]; *Steiner* v. *Long Beach Local No. 128* (1942) 19 Cal.2d 676, 682 [123 P.2d 20]; *City of L. A.* v. *Los Angeles etc. Council* (1949) 94 Cal.App.2d 36, 41 [210 P.2d 305]).

Moreover, the limitation placed upon the equity jurisdiction of the courts does not violate the separation of powers doctrine. While constitutionally vested *powers* of the court may not be enlarged or limited by legislation, the Legislature may constitutionally determine the *grounds* for equitable relief under which injunctions may be granted (*Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 726-727 [192 P.2d 916]).

Nor is section 527.3 in conflict with federal labor policy. Congress, in enacting its labor legislation, did not address the preemption implications.[6] Rather, the task of accommodating the imperatives of the federal scheme with the local needs of the state has been left to the courts (*Machinists* v. *Wisconsin Emp. Rel. Comm'n* (1976) 427 U.S. 132 [49 L.Ed.2d 396, 96 S.Ct. 2548]).

Thus, section 527.3 does not restrict otherwise permitted conduct but rather enlarges the scope of conduct left to the free play of economic forces. In its opening declaration, the provision states that the limitations of equitable jurisdiction are designed to further employee rights of self-organization and collective bargaining by limiting all unnecessary judicial intervention which would otherwise alter the bargaining position of the employee. This objective is in harmony with the objectives of federal labor policy as evidenced by the Norris-LaGuardia Act (29 U.S.C. § 102).

■ Furthermore, the court has reiterated that where the regulated "'conduct touch[es] interests so deeply rooted in local feeling and re-

---

[6]It is noteworthy that there is no case law which has held that a state anti-injunction statute was preempted. Rather, the opposite is found (*C. H. Elle Const. Co.* v. *Pocatello Bldg. & C. Tr. Council* (1956) 77 Idaho 514, 78 Idaho 1 [297 P.2d 519, 522-523].)

sponsibility...,'" the federal labor policy will not be construed to preclude the states from regulating aspects of labor relations that involve such conduct. "Policing of actual or threatened violence to persons or destruction of property has been held most clearly a matter for the States" (*Machinists* v. *Wisconsin Emp. Rel. Comm'n, supra,* 427 U.S. at p. 136 [49 L.Ed.2d at p. 401]; *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 244 [3 L.Ed.2d 775, 782, 79 S.Ct. 773]; *Youngdahl* v. *Rainfair, Inc.* (1957) 355 U.S. 131, 137-138 [2 L.Ed.2d 151, 156, 78 S.Ct. 206]). This, too, is reflected in the statute (§ 527.3, subds. (b)(1), (e)).

The critical question remains as to what extent section 527.3 protects the conduct alleged in the present case. In interpreting the statute, however, we are subject to the fundamental rules of statutory construction. ■ "'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

With these principles in mind, we first turn to the statute to ascertain when injunctions can be issued. Section 527.3 provides in pertinent part: "(a) ... the equity jurisdiction of the courts in cases involving or growing out of a labor dispute *shall be no broader than as set forth in subdivision (b) of this section,* and the provisions of subdivision (b) of this section *shall be strictly construed in accordance with existing law governing labor disputes* with the purpose of avoiding any unnecessary judicial interference in labor disputes.

"(b) The acts enumerated in this subdivision, whether performed *singly or in concert,* shall be legal, and no court nor any judge nor judges thereof, shall have jurisdiction to issue any restraining order or preliminary or permanent injunction which, in specific or general terms, prohibits any person or persons, whether singly or in concert, from doing any of the following: [¶] (1) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, *or by any other method not involving fraud, violence or breach of the peace.* . . .

"(e) It is *not the intent of this section to permit* conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or *other similar unlawful activity*" (italics added).

On their face, these provisions indicate that injunctions can be issued to bar concerted activity involving at the very least fraud, violence or breach of peace. Subdivision (b) declares "legal" certain conduct which no court has jurisdiction to enjoin. By stating that fraud, violence and breach of peace remain illegal despite subdivision (b), the logical implication is that the court may enjoin such conduct. Furthermore, by stating that the intendment of the statute is not to permit other unlawful conduct despite subdivision (b), subdivision (e) brings those acts outside the scope of subdivision (b) and outside the area which subdivision (b) protects from judicial supervision.

This construction is supported by case law. It is well established that unlawful activities, such as violence, intimidation and obstruction, may be enjoined by the courts. As was stated in *United Farm Workers of America* v. *Superior Court* (1976) 16 Cal.3d 499, 505 [128 Cal.Rptr. 209, 546 P.2d 713]: "In *United Farm Workers Organizing Committee* v. *Superior Court, supra*, 4 Cal.3d 556, wherein we cautioned against broad injunctions limiting 'legitimate activities of industrial combatants' (pp. 569-570) we also pointed out that '*Needless to say, nothing in this opinion should be construed as prohibiting a court from enjoining violence, activity which contains threats of injury, violence or reprisals, activity which creates public safety hazards, or activity which obstructs ingress and egress to buildings or stores.*' (P. 572, fn. 30.) Indeed, it has long been the rule that courts have the power and the duty to enjoin acts of violence and intimidation. '*Labor has no sanctuary in any federal right when it departs from the bounds of peaceful persuasion and resorts to acts of violence, physical intimidation, or false statement.* Under such circumstances, picketing loses its character as an appeal to reason and becomes a weapon of illegal coercion.' (*Steiner* v. *Long Beach Local No. 128, supra*, 19 Cal.2d 676, 682; see *Youngdahl* v. *Rainfair, Inc.* (1957) 355 U.S. 131, 138-140 [2 L.Ed.2d 151, 156-157, 78 S.Ct. 206] [injunction against violence. intimidation, threats and obstruction upheld]; *Drivers Union* v. *Meadowmoor Co.* (1941) 312 U.S. 287, 295-298 [85 L.Ed. 836, 842-843, 61 S.Ct. 552, 132 A.L.R. 1200] [injunction against peaceful picketing which was 'enmeshed with contemporaneously violent conduct'].)" (Italics added.)

Moreover, this pronouncement was reiterated in a postsection 527.3 decision, *International Molders etc. Union* v. *Superior Court* (1977) 70 Cal.App.3d 395 [138 Cal.Rptr. 794]. There the court found that "The law enunciated in section 527.3 does not ... differ from case law in this area" (p. 402), and therefore held that a preliminary injunction restraining union members from certain illegal activities was valid.

Nonetheless, appellants urge us to adopt an alternative interpretation of the statute, one which would remove all equity jurisdiction from the courts with regard to labor disputes. This argument is based upon the inclusion in subdivision (a) of the phrase, "the equity jurisdiction of the courts in cases involving or growing out of a labor dispute shall be no broader than as set forth in subdivision (b)."

This construction, however, is contrary to case law (*United Farm Workers Organizing Committee* v. *Superior Court, supra*, 4 Cal.3d 556; *International Molders etc. Union* v. *Superior Court, supra*, 70 Cal.App.3d 395), which is to be applied when using section 527.3, subdivision (a).

A third interpretation of the statute would limit the equity jurisdiction of the courts to those situations where the concerted activity involves fraud, violence or breach of peace (§ 527.3, subd. (b)(1)). Under this interpretation, the unlawful activities delineated in subdivision (e), however, could not be enjoined. This position, too, has little basis. Subdivision (e) does not merely declare certain conduct illegal. Rather, it assumes that the specified activities are illegal and goes on to state that it is not the intent of the Legislature "*to permit*" that unlawful conduct. Logically, if the Legislature did not intend "to permit" the enumerated unlawful conduct, it must have intended the opposite—to prohibit or forbid such conduct. The injunction is a primary tool for such prohibition.

Therefore, when subjecting section 527.3 to the statutory rules of construction and to recent case law interpretation, a court may enjoin picketing involving fraud, violence, breach of peace and other unlawful activities as provided in subdivisions (b)(1) and (e). "As it has ever been, the only legitimate objective of picketing thus continues to be the transmission of information to the public, so that the public may know the picketers' grievance and elect to support or reject it. Far from

repudiating this objective, section 527.3 reaffirms it. . . ." (*International Molders etc. Union v. Superior Court, supra*, 70 Cal.App.3d at p. 404.)

The Supreme Court has now established "that picketing which obstructs access, because of its tendency to lead to violence, is not the 'peaceful picketing' immunized from injunction by [subd. (b) of § 527.3]. So construed, subdivision (b) accords with subdivsion (e) of [§ 527.3); [the section] taken as a whole does not bar superior courts from enjoining obstructions to access" (*Kaplan's Fruit & Produce Co. v. Superior Court, supra*, 26 Cal.3d 60, 78). Hence section 527.3 did not operate to deprive the trial court in this cause of jurisdiction to enjoin picketing activities which obstructed access to Mandarin's premises.

The remaining issue is whether the statute upon proof of fraud, violence or other unlawful conduct permits the granting of an injunction which not only specifically enjoins identifiable unlawful acts (e.g., an injunction expressly directed to access) but which also regulates otherwise lawful acts (e.g., a more general numbers and spacing injunction). Two interpretations are possible. It can be argued that the statute is merely a codification of the constitutional requirements and does not prohibit the courts from issuing an injunction against even peaceful picketing activity where there has been proof of unlawful activity in the past. On the other hand, it can be argued that irrespective of past conduct, the statute bars the issuance of an injunction prohibiting or regulating in any way peaceful picketing (Shatz, *Picketing Injunctions in California: A Study of the Role of the Courts in Farm Labor Disputes* (1977) 28 Hastings L.J. 801).

The latter construction is supported by the language in the statute. Section 527.3, subdivision (b)(2) prohibits an injunction where there is "Peaceful picketing or patrolling involving any labor dispute, whether engaged in *singly or in numbers*" (italics added). This language coupled with subdivision (a), which requires that the provisions be construed "with the purpose of avoiding any unnecessary judicial interference" buttresses this position. Arguably, if the statute merely codifies constitutional requirements and maintains the status quo, it would render its enactment pointless. Thus, it can be asserted that the holding in *Steiner v. Long Beach Local No. 128, supra*, 19 Cal.2d 676, which establishes that past unlawful conduct by pickets may justify future regulation of lawful conduct through numbers and spacing restrictions, has been emasculated by section 527.3, subdivision (b)(2).

Though the statute does reveal this apparent inconsistency, recent California cases support the view, which we here adopt, that section 527.3 does not prohibit the issuance of an injunction against peaceful picketing activity accompanied by unlawful conduct.

Keeping in mind the legitimate objective of picketing (to transmit information to the public so that the public may know the picketers' grievance and elect to support or reject it), a distinction has been made between mere peaceful picketing and picketing en masse. In approving numbers and spacing injunctions, California courts have recognized that mass picketing, when accompanied by unlawful conduct, has the effect of intimidation and coercion and is therefore enjoinable (*Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893, 903-904 [132 Cal.Rptr. 443, 553 P.2d 603];[7] *Musicians Union, Local No. 6* v. *Superior Court* (1968) 69 Cal.2d 695, 710 [73 Cal.Rptr. 201, 447 P.2d 313]; *People* v. *Spear* (1939) 32 Cal.App.2d 165, 168 [89 P.2d 445]).

Similarly, in *California Retail Liquor Dealers Institute* v. *United Farm Workers, supra*, 57 Cal.App.3d 606, the court upheld a numbers and spacing injunction based upon a declaration that union pickets had massed in front of entrances to liquor stores so as to prevent the public from entering and had engaged in acts of violence and property damage. In doing so, the court stated: "The present record adequately justifies the restrictions imposed by the trial court. Pickets had blocked entrances and driveways and had harassed and intimidated customers of the boycotted stores. The declarations reveal a pattern of unlawful activity. On the other hand, it does not appear that the number and distance restrictions will impede peaceful informational picketing; the restrictions are not so severe that the union would be unable to communicate its grievances effectively to patrons of the picketed stores. [Citations.]" (P. 611.)

Furthermore, the court reaffirmed the *Steiner* doctrine as was done in its parent decision, *United Farm Workers of America* v. *Superior Court, supra*, 16 Cal.3d 499.

More importantly, however, the law summarized in *United Farm Workers of America* v. *Superior Court, supra*, and *California Retail*

---

[7]Reversed on other grounds 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745], subsequent opinion (1979) 25 Cal.3d 317 [158 Cal.Rptr. 370, 599 P.2d 676].

*Liquor Dealers Institute* v. *United Farm Workers, supra,* 57 Cal.App. 3d 606, has been reaffirmed in *International Molders etc. Union* v. *Superior Court, supra,* 70 Cal.App.3d 395, 402. In *International Molders,* the court found that "Nothing in section 527.3, subdivision (b), prevents a court from placing reasonable restrictions on picketing where, as here, the absence of such restrictions has resulted in threats of violence and interference with access and with freedom of movement..." (p. 406). In addition, the court rejected the reading of "'whether... singly or in numbers' in subsection (b)(2)," as prohibiting a numbers and spacing injunction. Rather, the phrase was interpreted to be "merely descriptive of the picketing activity which the statute condones and which is commonly carried on by more than a single picket" (p. 404). The preliminary injunction limiting the numbers and spacing of picketers was therefore found to be valid. Thus, in light of these recent decisions, coupled with the demand that section 527.3 be strictly construed in accordance with existing law governing labor disputes, numbers and distance restrictions are not prohibited.

Before examining the preliminary injunction issued in the present case, we must remember that "an order affecting peaceful picketing activity '"must be couched in the narrowest terms that will accomplish the pinpointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'"'" (*United Farm Workers of America* v. *Superior Court, supra,* 16 Cal.3d at p. 504; *California Retail Liquor Dealers Institute* v. *United Farm Workers, supra,* 57 Cal.App.3d at pp. 610-611.)

With this in mind, we now turn to the preliminary injunction issued in the present case. The injunction enjoins appellants from: "(1) Placing, maintaining or stationing any pickets or persons in excess of three (3) at each entrance to Plaintiff's premises;

"(2) Placing, maintaining or stationing any pickets or persons at each entrance to Plaintiff's premises any closer than ten (10) feet to said entrances, with pickets fifteen (15) feet apart and moving;

"(3) Obstructing, blocking or hindering the ingress or egress of Plaintiff's customers, suppliers and others seeking to do business with Plaintiff, to and from Plaintiff's aforesaid premises, or the customers, suppliers and invitees of any other person;

"(4) Obstructing, hindering, stopping or slowing or interfering with the movement of Plaintiff's cars or trucks or other equipment or the trucks, cars or other equipment of Plaintiff's customers, suppliers, or others seeking to do business with Plaintiff, or invitees or those of any other person;

"(5) Threatening physical violence to the person or property of customers, suppliers, other persons seeking to do business with Plaintiff or invitees of Plaintiff, or any other person;

"(6) Threatening physical violence to the person or property of persons employed by Plaintiff or any other person;

"(7) Threatening and/or committing acts of intimidation and physical violence against Plaintiff's business property, officers, agents, employees, customers, suppliers, patrons or others desiring to do business or perform work for Plaintiff;

"(8) Interfering with the operation of Plaintiff's business and work by threatening, intimidating, or assaulting any employee or any other person doing business with Plaintiff or exercising their right to work for or do business with Plaintiff;

"(9) [Deleted by the court.]

"(10) Engaging in loud boisterous shouting, yelling and/or other noises and activities to disturb the peace at Plaintiff's place of business."

As stated earlier, a substantial showing was presented to the trial court showing strenuous efforts by the pickets to interrupt the business of Mandarin and to intimidate potential customers as well as the owners of the restaurant.

Accordingly, paragraphs (1) through (4) of the preliminary injunction are properly directed toward preventing any recurrence of the unlawful activities by the picketers. The number and distance restrictions are not so severe that the unions are unable to communicate their grievances effectively to the public. It provides a reasonable limitation in order to permit ingress and egress and minimize physical confrontations.

Paragraphs (5) through (8) are also properly drawn. While no actual violence occurred, there was considerable evidence of threats of violence.

Under section 527.3, the courts need not wait until actual violence erupts. In view of subdivision (a) of that section, the court may properly enjoin "violence, threats of violence and obstructions to ingress and egress which threatened public health and safety" (*Sears Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters, supra,* 17 Cal.3d at p. 904; see fn. 7, *ante*).

Finally, section 527.3, subdivision (e), permits the activities enumerated in paragraph (10) to be enjoined. Abundant evidence was presented to the trial court that such disturbances of the peace had been committed by the unions prior to the issuance of the injunction.

The order denying the motion to dissolve the preliminary injunction is affirmed.

Rouse, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 27, 1982. Bird, C. J., and Newman, J., were of the opinion that the petition should be granted.