[No. C032746. Third Dist. Feb. 16, 2001.]

WAREMART FOODS, Plaintiff and Appellant, v.
UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL
588, Defendant and Appellant.

**COUNSEL**

Seyfarth, Saw, Fairweather & Geraldson, Nick C. Geannacopulos, Steven B. Katz and Samuel McAdam for Plaintiff and Appellant.

Davis, Cowell & Bowe, J. Thomas Bowen, Steven L. Stemerman, Andrew J. Kahn and Joni S. Jacobs for Defendant and Appellant.

**OPINION**

**SIMS, Acting P. J.**—Defendant United Food and Commercial Workers Union, Local 588 (Union) appeals from an order granting a preliminary injunction restricting the Union's picketing activity at the retail store of plaintiff Waremart Foods doing business as WinCo Foods (Waremart).[1] The Union originally contended the injunction was unwarranted and overbroad

---

[1]An order granting a preliminary injunction is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6).)

under Code of Civil Procedure section 527.3, which limits trial court jurisdiction to enjoin specified acts relating to labor disputes.

Waremart cross-appeals insofar as the trial court denied Waremart's request for an injunction barring *all* Union activity from Waremart's premises.

At the oral argument in this case, the Union pointed out that new provisions of the Labor Code (§§ 1138-1138.5) had become effective on January 1, 2000, during the pendency of this appeal.[2] (Stats. 1999, ch. 616, § 1 [Assem. Bill No. 1268].) The Union argued that these new provisions applied to the preliminary injunction entered in this case and mandated reversal of the injunction.

We allowed the parties to file supplemental briefs addressing the possible application of the new Labor Code provisions. In its supplemental brief, the Union points particularly to the following portion of section 1138.1, which provides (in language substantially identical to a federal statute, 29 U.S.C. § 107):

"(a) No court of this state shall have authority to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, . . . except after findings of fact by the court, of all of the following: [¶] . . . [¶]

"(5) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. . . ."

Also cited by the Union in its supplemental briefing is new section 1138.3, which provides (in language identical in substance to 29 U.S.C. § 109): "No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute,[3] except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of the restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of the specific act or acts as may be expressly complained of in the complaint or petition filed in such case and as shall be expressly included in findings of fact made and filed by the court."

---

[2] All undesignated statutory references are to the Labor Code.

[3] Section 1138.4 says "labor dispute" has the same meaning here as it does in Code of Civil Procedure section 527.3. The definitions in Code of Civil Procedure section 527.3, in turn, are substantially the same as federal labor law definitions contained in 29 United States Code section 113.

The Union contends the instant preliminary injunction cannot stand because, inter alia, the trial court made no finding that public officers charged with the duty to protect Waremart's property are unable or unwilling to furnish adequate protection, as required by section 1138.1, subdivision (a)(5) (hereafter section 1138.1(a)(5)). The Union also contends the record contains no substantial evidence supporting any such finding.

We shall conclude that section 1138.1(a)(5) applies to measure the legality of the preliminary injunction, that the parties did not litigate the question whether public officers charged with the duty to protect Waremart's property are unable or unwilling to furnish adequate protection, that the trial court made no finding on the question, and that the record is inadequate to support an implied finding on the question, so that the order granting the preliminary injunction must be reversed.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1999, Waremart filed a "COMPLAINT FOR DAMAGES, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION TO RESTRAIN UNLAWFUL PICKETING, THREATENING CONDUCT AND THE NUMBER OF PICKETS; DECLARATORY RELIEF; INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS AND WITH PROSPECTIVE BUSINESS RELATIONS; TRESPASS." The complaint alleged as follows:

Waremart's store in Antelope is a free-standing store that sells food and small household merchandise in a space of 50,000 square feet. The store sits on approximately 40 acres, owned by Waremart. The store has a "no distribution or solicitation" policy and posts signs restricting access to the premises to customers and suppliers.

On January 18, 1999, Waremart held the grand opening of the Antelope store. Apparently anticipating Union activity, Waremart informed the Union about the no-solicitation policy and, without waiving any rights, provided the Union with a written policy containing time, place and manner restrictions for activities on the premises.

In January 1999, Union agents came onto store property, failed to follow the restrictions, and refused to leave when asked to do so. Waremart believed the Union's objective was to gain recognition as a bargaining unit for Waremart employees. As alleged in the complaint, since January 1999, the Union has used illegal picketing and coercive means against Waremart, its employees, agents, customers, and other invitees, and had used illegal means to keep the public away from the store for the purpose of unlawfully

interfering with Waremart's legitimate business activities. Every day except Sundays and an occasional day of bad weather, the Union's agents have engaged in picketing in front of the store entrance and on the sidewalks and driveways. At times, more than nine agents blocked access to the store. The Union's agents shouted threatening slogans in the faces of customers, employees, and other invitees, forced them to walk in the street, followed customers to their cars and recorded their vehicle license plate numbers.[4]

On April 2, 1999, the trial court issued a temporary restraining order (TRO), enjoining the Union's agents from (1) picketing within 15 feet of each other or of the store's doors, (2) intimidating, threatening, initiating physical contact with Waremart's agents and invitees, following them for purposes of intimidation or harassment, recording their license plate numbers, or (3) engaging in loud or boisterous conduct with drums, whistles, horns, etc.

Thereafter, Waremart moved the court for an order granting a preliminary injunction.

Waremart submitted declarations from various customers, attesting that members of the Union had harassed and intimidated them by writing down the license plate numbers of their cars, by aggressively proffering unwanted literature, and by yelling and making threats.

In opposition, the Union submitted declarations by Union members explaining or denying certain of the averments made in Waremart's showing.

The legal memoranda of the parties did not tender the issue whether public officers charged with the duty to protect Waremart's property were unable or unwilling to furnish adequate protection.[5] Nor was this issue tendered by the oral arguments of either party made during the hearing on the preliminary

---

[4]We denied Waremart's appellate motion to add new evidence—depositions taken after issuance of the preliminary injunction. Accordingly, we disregard the references to such new evidence in Waremart's appellate briefs.

[5]In the trial court, passing allusions to law enforcement were made in other contexts. Thus, the Union asserted in its memorandum of points and authorities that there was no harassing conduct on its part, because the police had not stopped the Union's activity even after being called out to the property. The Union also argued there was an adequate remedy at criminal law for any illegal activity, noting there had been a citizen's arrest charging a picketer with assaulting a customer. Waremart's reply papers in the trial court referred to a sheriff's report documenting the assault incident but did not develop any argument that law enforcement was unwilling or unable to furnish adequate protection. Waremart merely asserted the sheriff's report constituted evidence that the Union violated the court order by recording customers' license plate numbers. However, the sheriff's report indicated the TRO violation consisted of

injunction. The only evidence bearing on the issue and cited by the parties is as follows:

The Union cites evidence concerning only one incident, in the declarations of Union supervisor Darin Ferguson and Union representative Michael Guilford, who attested sheriff's deputies came to the store and cited Guilford for assaulting a customer.

Waremart responds by citing to a different declaration from Ferguson, attesting: "Although [Waremart] has called the police three times to t[ry?] and stop the rover [recording license plate numbers], the police have refused to take a report or intervene to stop the rover's activity."

Neither party cites any evidence in the record as to why the police refused to intervene, or what information they were given about the situation.

On April 21, 1999, the trial court issued its order granting the preliminary injunction. The trial court made extensive findings of fact, based on the documentary evidence.[6] The trial court made no finding that public officers charged with the duty to protect Waremart's property were unable or unwilling to furnish adequate protection.

---

a Union picketer pushing a customer. With reference to license plate numbers, the deputy indicated that while he was on the premises, a female complained to the store manager about a picketer writing down her license plate number, but she did not want to make a formal complaint. A union representative was asked to retrieve a clipboard from a picketer; on it the deputy saw a paper apparently bearing license plate numbers. The union representative said he would have the picketers discontinue following people to their cars. There was no evidence or argument as to whether the deputy intervened or was asked to intervene on this matter.

[6]The findings of fact are as follows:

1. The Union placed as many as six agents within the approximately 30-foot-long, 14-foot-wide alcove containing the store's entrance and exit doors. At times the agents stood in clustered groups before the entry doors, waving flyers and signs in customers' faces, and yelling at customers and employees. On one occasion, agents physically approached and intimidated a female employee by yelling at her, moving to within 17 inches of her and forcing her to back up several feet until her path was blocked. On another occasion, an agent raised his voice and stood immobile so as to block the path of two customers into the store. Two agents stopped a woman and her son, and one of the agents yelled at them when they walked away. The Union's conduct "has caused some customers to feel intimidated, threatened, and fearful, and to leave the premises without entering the store; and that ingress to the store has been blocked on occasion."

2. The Union's agents stood within a "safety zone," (the safety zone is a portion of the drive in front of the store, marked with white stripes, designed to be kept clear for pedestrian traffic and emergency vehicle parking) stopped customers and vehicles within the safety zone, followed customers leaving the store out into and through the safety zone—conduct which caused safety hazards within the safety zone.

3. The Union's agents followed customers from the store to their cars, yelled at customers, and recorded their license plate numbers—conduct that caused safety hazards within the parking lot and caused customers to feel threatened and fearful.

The trial court then issued a preliminary injunction enjoining and restraining the Union and its agents from various activities and conduct in the vicinity of Waremart's store. The preliminary injunction did not bar the Union completely from Waremart's premises.

The Union appeals from the preliminary injunction. Waremart cross-appeals insofar as the trial court declined to ban the Union completely from Waremart's premises.

## DISCUSSION

■■■ The Union contends the preliminary injunction cannot stand because, inter alia, newly enacted section 1138.1(a)(5) provides that no court of this state shall have authority to issue a temporary or permanent injunction in any case involving a labor dispute unless the court makes a finding of fact that the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. The Union correctly notes that the trial court made no such finding in this case.

The initial question, then, is whether the newly enacted statute applies to govern the legality of the injunction in this case.

The statute in question was enacted in 1999 as a part of Assembly Bill No. 1268 (1999-2000 Reg. Sess.) (Assembly Bill No. 1268). In *United Food & Commercial Workers Union v. Superior Court* (*Gigante USA, Inc.*) (2000) 83 Cal.App.4th 566 [99 Cal.Rptr.2d 849] (hereafter *Gigante*) the Second District recently held that Assembly Bill No. 1268 applied to a preliminary injunction issued before the new law took effect. (83 Cal.App.4th at pp. 575-576.) "[B]ecause relief by injunction operates in futuro, the propriety of an injunction will be scrutinized pursuant to a statute that arose after the issuance of the injunction. [Citations.]" (*Id.* at p. 575; see also *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (*Sears*) (1979) 25 Cal.3d 317, 323 [158 Cal.Rptr. 370, 599 P.2d 676] [Code Civ. Proc., § 527.3 applied to injunction issued prior to its passage].)

*Gigante* arose in a different procedural context than the instant appeal, because in *Gigante,* the parties stipulated to issuance of a preliminary

---

4. The Union's agents stopped cars in the street and driveways at the street entrance to Waremart's property—conduct which caused safety hazards and the blocking of ingress and egress to the property.

5. After the court issued the TRO, there was (1) an incident where an agent swore at a customer and engaged in at minimum a shoving match and possibly assault, and (2) an incident where an agent lunged at a customer and his daughter, and Union agents continued to stand within 15 feet of each other at the entrance. The court expressly found "the potential for serious violence has escalated since the issuance of the TRO."

injunction (limiting labor union activity on a grocery store's property), and there was no appeal pending when Assembly Bill No. 1268 went into effect. (*Gigante, supra,* 83 Cal.App.4th at pp. 570-571.) After the new law went into effect, the unions moved for summary judgment under the new law, on the ground, inter alia, Gigante had not shown that law enforcement was unable or unwilling to furnish adequate protection, and without such a showing no injunction may be had. (*Id.* at p. 572.) One union alternatively sought dissolution of the preliminary injunction on the ground the injunction was no longer valid under the new Labor Code provisions. (*Ibid.*) The trial court denied the motions for summary judgment, concluding a question of fact existed regarding law enforcement's ability to furnish adequate protection. (*Id.* at p. 573.) The trial court denied the request to dissolve the preliminary injunction, concluding the matter should have been raised in a separate motion and the union had failed to show Gigante could not, as a matter of law, meet the requirements for issuance of an injunction under the new law. (*Ibid.*)

 The appellate court in *Gigante* issued a writ directing the trial court to grant the unions' summary judgment motions. (*Gigante, supra,* 83 Cal.App.4th at p. 582.) *Gigante* first determined. the new Labor Code provisions applied to the existing preliminary injunction, since injunctive relief operates into the future. (*Id.* at pp. 575-576.) *Gigante* quoted from *M Restaurants, Inc. v. San Francisco Local Joint Exec. Bd. Culinary etc. Union* (1981) 124 Cal.App.3d 666, 674 [177 Cal.Rptr. 690] (*M. Restaurants*) that " '[t]he preliminary injunction is a decree continuing in nature, directed at future events. It creates no right, but merely assumes to protect a right from unlawful and injurious interference [citations]. The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action [citation]. Therefore, when it is shown that " 'there has been a change in the controlling facts upon which the injunction rested, or *the law has been changed, modified or extended,* or where . . . the ends of justice would be served by modification,' " the trial court has the inherent power to modify or vacate the injunction [citation].' " (*Gigante,* at pp. 575-576, original italics.)

*M Restaurants, supra,* 124 Cal.App.3d 666, held Code of Civil Procedure section 527.3 applied to a controversy even though the statute became effective after the preliminary injunction was issued. There, the unions filed in the trial court a motion to dissolve the preliminary injunction based on the new statute. The trial court denied the motion. The appellate court held the newly enacted statute did apply to the controversy, and the statute was not unconstitutional or in conflict with federal labor policy, but on the merits the

trial court's denial of the motion to dissolve the injunction was proper. (124 Cal.App.3d at pp. 672-674.)

■ Based on these authorities, we conclude section 1138.1(a)(5) applies to test the legality of the preliminary injunction issued in this case.

Waremart tenders a variety of arguments in opposition to this conclusion.

Waremart first argues the Union has waived application of the new statute because (unlike the unions in *Gigante* and *M Restaurants*) the Union here did not file a motion in the trial court seeking to modify or dissolve the preliminary injunction in light of the new law, after the new law went into effect on January 1, 2000. However, when the new law went into effect on January 1, 2000, this appeal was already pending (having been filed on May 27, 1999).

Since the appeal was pending when the new law went into effect, the Union could not obtain a modification of the preliminary injunction in the trial court. (Code Civ. Proc., § 916.) ■ Thus, where a preliminary injunction has been appealed to the Court of Appeal, the trial court is without jurisdiction to modify or dissolve the preliminary injunction during pendency of its appeal. (*Environmental Coalition of Orange County, Inc. v. AVCO Community Developers, Inc.* (1974) 40 Cal.App.3d 513, 525-526 [115 Cal.Rptr. 59], citing Code Civ. Proc., § 916 [perfecting of appeal stays proceedings in the trial court upon the order appealed from].) The cases cited by Waremart are not on point, because the trial courts in those cases had not been deprived of jurisdiction by the pendency of an appeal.

Waremart next argues that retroactive application of section 1138.1(a)(5) would deny it fundamental due process—an issue assertedly omitted from *Gigante* and *M Restaurants.* We disagree. *M Restaurants, supra,* 124 Cal.App.3d 666, held Code of Civil Procedure section 527.3, which was applicable to a controversy predating its enactment, did not deny due process or equal protection and did not conflict with federal labor policy. (124 Cal.App.3d at pp. 674-679.)

■ Waremart complains *M Restaurants* did not address retroactive application of procedural rules. Waremart points out section 1138.1, subdivision (b) now requires an employer to notify law enforcement of the court hearing for an injunction—a requirement with which Waremart did not comply and had no reason to comply, since no requirement existed at the time of the hearing under consideration in this appeal. However, we have no occasion to address this procedural aspect of subdivision (b) of section

1138.1, because we rely on subdivision (a)(5) of that statute, which requires the trial court make a finding of fact that public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection. To be sure, subdivision (a)(5) is procedural in the sense that it requires a trial court to make a finding of fact. But subdivision (a)(5) implicitly presupposes that the complainant has made a substantive showing that public officers are unable or unwilling to furnish adequate protection. Subdivision (a)(5) reflects the policy judgment of the Legislature that an injunction in a labor dispute should not issue unless the showing required by subdivision (a)(5) is made and found by the trial court. We perceive no unfairness to Waremart (and hence no violation of due process) in application of this rule to Waremart as it relates to the *continuation* of the preliminary injunction. After all, we are not applying section 1138.1(a)(5) to undo what has already been enjoined, but only as to what will be enjoined in the future. Were we to decline to apply section 1138.1(a)(5) to this case, we would sanction the continuation of an injunction in a situation in which the Legislature has determined that injunctive relief should be unavailable.

Waremart next argues that section 1138.1(a)(5) is somehow preempted by federal labor law, specifically the National Labor Relations Act (NLRA) 29 United States Code section 151 et seq. We do not agree with this contention.

"Cases that have held state authority to be pre-empted by federal law tend to fall into one of two categories: (1) those that reflect the concern that 'one forum would enjoin, as illegal, conduct which the other forum would find legal' and (2) those that reflect the concern 'that the [application of state law by] state courts would restrict the exercise of rights guaranteed by the Federal Acts.' [Citation.] '[I]n referring to decisions holding state laws pre-empted by the NLRA, care must be taken to distinguish pre-emption based on federal protection of the conduct in question . . . from that based predominantly on the primary jurisdiction of the National Labor Relations Board . . . , although the two are often not easily separable.' [Citation.]" (*Machinists v. Wisconsin Emp. Rel. Comm'n* (1976) 427 U.S. 132, 138 [96 S.Ct. 2548, 2552, 49 L.Ed.2d 396, 402], original brackets.)

Waremart's supplemental brief cites case authority for both types of preemption: (1) where state law conflicts with federal law, and (2) where the National Labor Relations Board (NLRB) has primary jurisdiction over a dispute. We shall take these issues in reverse order.

We do not see how Waremart is aided by a claim that the NLRB may have primary jurisdiction over this dispute. It is Waremart that repaired

to the courts of this state and that obtained the state court preliminary injunction. If the NLRB has primary jurisdiction of this dispute, that conclusion would undermine the state court's assumption of jurisdiction and the legality of Waremart's preliminary injunction. We see no need to address this matter further.

Nor is section 1138.1(a)(5) preempted by federal law on the theory that it promulgates a different rule of conduct than that sanctioned by federal law. This is so because section 1138.1(a)(5) is substantially identical to federal law.

Thus, Assembly Bill No. 1268 was passed for the express purpose of adopting for California provisions similar to those provided by federal labor law. The Legislative Counsel's Digest for Assembly Bill No. 1268 states: "Existing federal law, the Norris-LaGuardia Act [(29 U.S.C. §§ 101-115)], among other things, limits the liability of labor unions, or officers or members thereof, for the unlawful acts of individual members except upon clear proof of actual participation in, or actual authorization or ratification of, those unlawful acts. That law also limits the authority of a court to issue a temporary or permanent injunction in a labor dispute except upon a hearing establishing specified facts and upon the filing of an undertaking, the amount thereof to be set by the court, with the undertaking to have a specified legal effect; and restricts the right to a restraining order or injunctive relief in a labor dispute, as specified. [¶] This bill would enact similar provisions under state law." (Legis. Counsel's Dig., Assem. Bill No. 1268; see also *Gigante, supra,* 83 Cal.App.4th at pp. 577-579 [since Assem. Bill No. 1268 was patterned after federal law, California courts will look to federal law for guidance in construing Assem. Bill No. 1268].)

Thus, section 1138.1(a)(5) is substantially identical to 29 United States Code section 107, which provides:

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, . . . except after findings of fact by the court, to the effect . . . [¶]. . . [¶]

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. . . ."

Since section 1138.1(a)(5) is substantially identical to 29 United States Code section 107, the state statutory provision does not sanction or prohibit

conduct that is allowed or disallowed by federal law, so that the state statutory provision is not preempted by federal law on that theory.[7]

Waremart next argues application of section 1138.1(a)(5) would violate the takings clause of the Fifth Amendment to the United States Constitution, which provides that "private property [shall not] be taken for public use without just compensation."

However, this argument challenges section 1138.1(a)(5) not in and of itself but jointly with Code of Civil Procedure section 527.3, a statute whose constitutionality we need not address in this appeal, because Waremart failed to raise this challenge in its original briefing,[8] and we limited supplemental briefing to the new Labor Code provisions. Thus, for purposes of this appeal, we assume Code of Civil Procedure section 527.3 is constitutionally valid.

Waremart fails to present argument or authority as to how section 1138.1(a)(5) presents any takings clause problem, assuming the constitutional validity of Code of Civil Procedure section 527.3. Thus, for example, under the "takings clause" heading, Waremart asserts the new law imposes unique hurdles. However, the only "unique hurdle" mentioned by Waremart which is pertinent to this appeal is proof of law enforcement ineffectiveness. Waremart wholly fails to show how this creates a takings clause issue, and we do not perceive how it does.

Waremart also argues that application of section 1138.1(a)(5) violates federal and state constitutional guarantees of equal protection of the laws.

Waremart cites *Carey v. Brown* (1980) 447 U.S. 455 [100 S.Ct. 2286, 65 L.Ed.2d 263], which struck down on equal protection grounds an Illinois

---

[7]Notably, Code of Civil Procedure section 527.3, which also specifies conditions for the issuance of injunctions in labor disputes, was also patterned after the Norris-LaGuardia Act. (*M Restaurants, supra,* 124 Cal.App.3d at p. 674.) The Norris-LaGuardia Act was passed to remedy the abusive use of the injunction in labor disputes. (*M Restaurants,* at p. 674.) It limited the jurisdiction of federal courts to issue injunctions in labor disputes except where fraud or violence was present. (*Id.* at pp. 674-675.) It "merely restricted and limited equitable remedies and did not make substantive changes in the law. [Citation.]" (*Id.* at p. 675.) *M Restaurants, supra,* at page 675, noted that other states have similar "Little Norris-LaGuardia" statutes, and Wisconsin's statute withstood a constitutional challenge in *Senn v. Tile Layers Union* (1937) 301 U.S. 468 [57 S.Ct. 857, 81 L.Ed. 1229].

[8]Waremart mentioned a constitutional challenge to Code of Civil Procedure section 527.3 only once in its 40-page memorandum of points and authorities in the trial court, and only in passing in a footnote to an argument that federal labor law no longer authorizes nonemployee union agents to picket on private property unless on-site employees are otherwise inaccessible. Thus, any such argument has been waived on appeal.

statute barring picketing "before or about" residences, except for peaceful picketing of places of employment involved in labor disputes. Waremart also cites *Police Department of Chicago v. Mosley* (1972) 408 U.S. 92 [92 S.Ct. 2286, 33 L.Ed.2d 212], which struck down on equal protection grounds a Chicago disorderly conduct ordinance condemning picketing near schools, except for peaceful picketing of any school involved in a labor dispute.

These cases stand for the proposition that state laws cannot grant special preference to the location at which picketing occurs in a labor dispute. Section 1138.1(a)(5) does no such thing. It places no limitations on the location or content of speech. It is, rather, a rule of procedure applicable to the obtaining of injunctive relief in state court and does not address speech, such as peaceful picketing, but only "unlawful acts" (§ 1138.1, subd. (a)). It says simply that an applicant for injunctive relief against unlawful acts in a labor dispute must first demonstrate that law enforcement has been ineffective in protecting the applicant's property.

■ . In determining whether section 1138.1(a)(5) violates guarantees of equal protection, "the threshold question we confront is which standard of review applies." (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 480 [97 Cal.Rptr.2d 334, 2 P.3d 581].) As a general rule, unless a legislative classification is a suspect classification or touches on fundamental interests, the question is whether the classification bears some rational relationship to a conceivable legitimate state purpose. (*Ibid.*) Where a legislative classification involves a suspect classification or touches on fundamental interests, the state bears the burden of establishing not only that it has a compelling interest which justifies the law but that the distinctions drawn by the law are necessary to further its purpose. (*Ibid.*)

■ Waremart makes no argument and cites no authority supporting the view that a state statute that sets out procedural requirements for obtaining injunctive relief against unlawful acts creates a suspect classification or touches on fundamental interests, so that strict scrutiny of the statute is warranted.[9] In the absence of argument or authority by Waremart as to why strict scrutiny should apply, we shall apply the general rule for testing the constitutionality of procedural rules adopted by the Legislature for the operation of the courts of law, as announced by our Supreme Court in *Cohen*

[9]In a footnote, Waremart asserts without explanatory argument that the court in *M Restaurants, supra,* 124 Cal.App.3d at page 677, should have applied a strict scrutiny test in reviewing Code of Civil Procedure section 527.3. However, that is a different statute, and the analytical basis for Waremart's assertion does not appear in its truncated footnote argument.

*v. City of Alameda* (1914) 168 Cal. 265, 267 [142 P. 885]: "In general, it may be said that the legislative discretion as to the different modes of procedure or rules of practice to be prescribed for the numerous and various actions and proceedings allowed in courts of justice is very wide, and that its judgment on the question whether or not a particular provision shall be made for any class of cases, and as to the classification thereof, is not to be interfered with except for very grave causes and where it is clear beyond reasonable doubt that no sound reason for the legislative classification, and for the different provisions regarding the same, exists. [Citations.]"

We conclude that there are at least three reasons justifying the legislative classification in section 1138.1(a)(5), which requires a party to a labor dispute to demonstrate law enforcement ineffectiveness prior to obtaining an injunction.

First, the classification is reasonably necessary to curtail abuses in the issuance of injunctions in labor disputes. Thus, as we have discussed, section 1138.1(a)(5) is modeled upon (indeed is substantially identical to) a provision of the Norris-LaGuardia Act. The Norris-LaGuardia Act was enacted to remedy the abusive use of the injunction in labor disputes. (*M Restaurants, Inc., supra,* 124 Cal.App.3d at p. 674.) Given the historical track record of abuses of injunctive relief in labor disputes, the Legislature could rationally decide that requiring parties to a labor dispute first to resort to law enforcement remedies would tend to avert abuses in the issuance of injunctive relief.

Second, requiring a first resort to law enforcement is in accord with established governmental policy to the effect that regulation of labor disputes is initially properly a matter for the executive, rather than the judicial branch. Thus, *Gigante, supra,* 83 Cal.App.4th 566, noted the Norris-La-Guardia Act (upon which § 1138.1(a)(5) was patterned) " 'was based upon a recognition of the fact that the preservation of order and the protection of property in labor disputes is in the first instance a police problem, belonging to the executive rather than the judicial side of the government, and its whole intent and purpose was to remove the courts from that field, except in cases where the peace authorities failed or refused to act.' [Citation.]" (83 Cal.App.4th at p. 578.)

Third, the Legislature could conclude that (as this case illustrates) proceedings for injunctive relief in labor disputes are inordinately large, complex, and time-consuming, so that it is appropriate to conserve limited and expensive trial court resources by requiring a litigant seeking injunctive

relief first to try to solve the problem by invoking the assistance of law enforcement.

All these reasons rationally support the classification made by the Legislature in section 1138.1(a)(5). We conclude Waremart has not shown that application of section 1138.1(a)(5) has denied it its federal or state constitutional rights to the equal protection of the laws.

We therefore conclude Waremart fails to show any reason not to apply section 1138.1(a)(5). We shall apply that statute to measure the legality of the injunction.

It is clear that the injunction cannot stand. The trial court made no finding, as required by the statute, that public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

Nor will we conclude the trial court made some sort of implied finding. Section 1138.3 conditions the issuance of a temporary or permanent injunction upon "findings of fact made and filed by the court in the record of the case prior to the issuance of the . . . injunction . . . ." This language appears to disallow implied findings that were not "filed by the court in the record of the case . . . ."

However, even assuming for the sake of argument that an implied finding can be made under the statutory scheme, we would not conclude that the trial court made an implied finding sufficient to satisfy section 1138.1(a)(5) on the record presented. As we have recounted above, the question of the ability or willingness of public officers to protect Waremart's property was simply not put in issue by the parties' legal memoranda or oral arguments to the trial court. Evidence on the question was limited. In these circumstances, it would be entirely inappropriate to conclude the trial court made an implied finding on the question.

We conclude the preliminary injunction must be reversed for failure to comply with the requirements of section 1138.1(a)(5). Accordingly, we need not resolve the issues tendered by Waremart's cross-appeal. Nothing in this opinion shall be construed so as to prohibit Waremart from applying for or obtaining a preliminary injunction upon compliance with current law, including constitutional provisions.

## DISPOSITION

The order granting the preliminary injunction is reversed. The parties shall bear their own costs on appeal.

Hull, J., and Kolkey, J., concurred.

A petition for a rehearing was denied March 9, 2001.