CHARLES D. BONANNO LINEN
SERVICE, INC., et al.,
Plaintiffs, Appellees,

v.

William J. McCARTHY et al.,
Defendants, Appellants.

No. 75–1397.

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1976.

Decided March 15, 1976.

As Amended on Denial of Rehearing
April 6, 1976.

James T. Grady, Boston, Mass., with whom Grady & McDonald, Boston, Mass., was on brief, for defendants-appellants.

Thomas V. Urmy, Jr., Boston, Mass., with whom John F. Sherman, III, Warner & Stackpole, and Lepie & Coven, Boston, Mass., were on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

In June, 1975, following a breakdown in negotiations, the defendant Local # 25, Teamsters, struck the Bonanno Linen Company. The other five plaintiff linen companies, members of a multi-employer bargaining group along with Bonanno, responded with a lock-out. In early August, plaintiffs

filed suit in Massachusetts court and gave notice of their intention to seek a temporary restraining order. The defendants removed the case to federal court, where a district judge held a hearing during which he received affidavits detailing acts of violence; but he declined to issue an order after receiving the assurances of a union field representative that the violence would cease. In the first week of September, however, violence flared up again, and, after another hearing at which oral testimony was taken, the judge did issue an order. Defendants appealed, arguing that the order violates several provisions of the Norris-LaGuardia Act.*

■ This court's jurisdiction is premised upon 29 U.S.C. § 110, which allows appeals of temporary injunctions but not temporary restraining orders. The hearing below was held with a view to a restraining order, and the order at issue is so labelled, but we find jurisdiction under the following unique circumstances of this case. The district judge offered to hold a hearing on a temporary injunction within the requisite five-day period, but the appellants rejected that offer, insisting instead on an immediate appeal and stipulating to an indefinite extension of the order for that purpose. They now urge us to treat the order as a temporary injunction. Appellees argue that it would be wrong to take jurisdiction and reverse in these circumstances, but urge that the interest of judicial economy would be served by affirming the order as a temporary injunction if we find that the requirements for such an injunction have been met. The stricter preconditions to issuance of a temporary injunction would preclude sole reliance on affidavits and include the necessity of notifying the appropriate chiefs of police. However, the district court's written opinion does not reflect a reliance on the affidavits, stressing instead the oral testimony, and there was also testimony of notification to the appropriate police departments. In any event, by stipulating to

an indefinite extension of the order and asking us to treat it as a temporary injunction, appellants appear to us to have waived any technical deficiencies in this respect. Moreover, we find that the oral evidence at the hearing was sufficient by itself to support a temporary injunction. We therefore treat the order as a temporary injunction and find jurisdiction over the appeal.

■ Appellants argue first that the district court failed to make findings "that the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection" as required under 29 U.S.C. § 107(e). This ignores the clear language of the district court's findings of fact, issued several weeks after the order: "The police, though willing, were unable to afford plaintiffs adequate protection", and "[T]he possibility for increased violence was very high." In reaching these conclusions the court relied heavily upon oral testimony at the hearing "detailing incidents of mass picketing, physical assault, window breaking, tire slashing, blocking of plaintiffs' driveways, and threatening." A review of the hearing transcript demonstrates ample support for these findings. There was no need for police admissions of inadequacy.

■ Appellants also argue that the order should not have been issued because the plaintiffs did not offer to arbitrate. Section 108 of Title 29 states in relevant part: "No restraining order or injunctive relief shall be granted to any complainant who . . . has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." Appellants do not dispute the district court's findings that "there have been seventeen meetings between Local 25 and the employer bargaining group including six meetings with the Federal Mediation and Conciliation Service", but they argue that the employer is required to offer to submit to arbitration

---

*At oral argument we were informed that the lock-out has ended, and that the union members have returned to work at all the plaintiff companies except Bonanno, where the strike continues.

prior to invoking the equity powers of the federal court. *Brotherhood of Railroad Trainmen Enterprise Lodge No. 27 v. Toledo, Peoria & Western Railroad,* 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534 (1944), upon which appellants rely most heavily, answers this directly at page 57, note 11, 64 S.Ct. at page 417, 88 L.Ed. at page 539, by rejecting the argument that the arbitration referred to in the statute is not qualified by the phrase "with the aid of any available governmental machinery". Under the Court's reading, the statute does not speak of any voluntary arbitration, but rather requires resort only to "any available governmental machinery of . . . voluntary arbitration." Such machinery does exist in the Railway Labor Act, 45 U.S.C. § 151 *et seq.,* in the context of which *Toledo* arose, but there is no parallel machinery in the present context. Moreover, unlike the situation in *Toledo,* the union here is unwilling to commit itself to arbitration, and is thus in a poor position to argue that the company's failure to suggest that route falls short of "every reasonable effort to settle such dispute". *See Piedmont Aviation, Inc. v. Airline Pilots Ass'n, Int'l,* 416 F.2d 633, 638–39 (4th Cir. 1969).

Finally, the union objects to the scope of the district court's order, which includes not only individuals identified by plaintiffs as being connected with the proscribed activities, but also the local, its officers and members generally. Appellants rely primarily upon the notion that 29 U.S.C. § 106 imposes a "clear proof" standard, but it is readily apparent that § 106 applies only (by its own terms) to liability for damages or criminal responsibility. Proof of union involvement satisfying § 107(a), and appropriate for the issuance of an injunction against continued, specified illegal acts, was found not only in the identification of union members as perpetrators of some of those acts, but also in the assurance by the union's field representative to the court in August that the illegal activity would cease (which it did, for several weeks), and in oral testimony, found credible by the district court, of approval by that

union representative of one of those subsequent acts.

*The District Court's order is affirmed as a temporary injunction.*