**KENAMERICAN RESOURCES, INC., et al., Plaintiffs,**

v.

**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Defendant.**

**Civil A. No. 95–2252–LFO.**

United States District Court, District of Columbia.

Jan. 11, 1996.

Gary W. Brown, McCandlish & Lillard, Fairfax, VA, for plaintiffs.

John S. Irving, Daniel F. Attridge, R. Alexander Acosta, Kirkland & Ellis, Washington, DC, for KenAmerican Company plaintiffs KenAmerican Resources, Inc., Coal Resources, Inc., The American Coal Sales Company, Pennsylvania Transloading, Inc., Land Restoration, Inc., and Mill Creek Mining Company.

Robert H. Stropp, Jr., Deborah Stern, United Mine Workers of America Legal Department, Washington, DC, John R. Mooney, Edward M. Gleason, Jr., Beins, Axelrod, Osborne, Mooney & Green, P.C., Washington, DC, for Defendant & Third Party Plaintiff, International Union, United Mine Workers of America.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiffs, KenAmerican Resources, Inc., *et al.*, are several coal mining companies operating in Ohio and Kentucky, among other places. They sue, and move for a preliminary injunction against, the International Union, United Mine Workers of America (the "Union"), which injunction would interdict their ongoing arbitration. By way of background there is uncontroverted evidence that for several months prior to December 1993, the Union was on strike against some employer coal companies, but not against plaintiffs. *See* Exhibit 3 of Plaintiffs' Motion at 4 (agreement between some of the plaintiffs and the Union providing that in consideration, in part, for plaintiffs' agreeing not to lock out any classified employees, the Union "will *not* call such strike against the Employer"). On December 16, 1993, the Union and the Bituminous Coal Operators Association entered into a "Memorandum of Understanding Regarding Job Opportunities" [hereinafter "December 1993 Agreement"]. The substance of the December 1993 Agreement was an undertaking by the signatory employers that "job openings for work of a classified nature shall be filled by mine management as follows: The first three (3) out of every five

(5) new job openings for work of a classified nature shall be offered to laid-off miners" from "laid-off panel members of the signatory Employer" or from "active miners who have notified the signatory Employer ... of their interest in and qualifications for any such job openings at the specific operation involved." *See* Exhibit 1 of Defendant's Opposition, ¶ 6. This provision of the December 1993 Agreement was to apply to *"existing, new, or newly acquired nonsignatory* bituminous coal mining operations of the nonsignatory Companies." *Id.* (emphasis added).

Plaintiffs are not members of the Bituminous Coal Operators Association. Nevertheless, on that same day, December 16, 1993, Robert E. Murray, on behalf of plaintiffs Ohio Valley Resources, Inc., Hocking Valley Resources, Inc., Ohio Valley Coal Company, and Ohio Valley Transloading Company [hereinafter referred to collectively as "Ohio Valley Resources, Inc."], and the Union entered into an "Adoption Agreement," by which the signatory plaintiffs agreed to be bound by the December 1993 Agreement reached between the Union and the Bituminous Coal Operators Association. The Adoption Agreement provided, in relevant part, that:

> The parties to this agreement are The Ohio Valley Coal Company ("Employer") and the International Union, United Mine Workers of America, on behalf of its employees. The parties hereto agree to adopt each and every term of the 1993 NBCWA [National Bituminous Coal Wage Agreement], including ... the Memorandum of Understanding regarding Job Opportunities, and the 1993 Memorandum of Understanding dated March 24, 1993....

*See* Exhibit 5 of Plaintiffs' Motion. In addition to adopting the December 1993 Agreement, the Adoption Agreement also explicitly incorporated an earlier understanding reached by Robert Murray, on behalf of Ohio Valley Resources, Inc., and the Union, dated March 24, 1993 [hereinafter "March 1993 Memorandum"]. In the March 1993 Memorandum, plaintiff Ohio Valley Resources, Inc. acted on behalf of "any subsidiary or affiliate

as of the date of this Agreement, or acquired during its term which may hereafter (during the term of this Agreement) be put into production or use" and also on behalf of "all current and future coal lands and operations of the Employer." *See* Exhibit 3 of Plaintiffs' Motion, ¶¶ 1, 3 (March 1993 Memorandum). The March 1993 Memorandum prospectively adopted the December 1993 Agreement.

On April 6, 1994, defendant Union sent to plaintiff Ohio Valley Resources, Inc. a form "Memorandum of Understanding Regarding Job Opportunities" [hereinafter "April 1994 Memorandum"], which reiterated the essential provisions of the December 16, 1993 instruments. The April 1994 Memorandum provided that any breach of the agreement "shall be referred to the Chairman of the UMWA–BCOA Labor Management Policy Committee," specifically, former Labor Secretary William Usery. *See* Exhibit 7 of Plaintiffs' Motion at 8. The April 1994 Memorandum further provided that "[t]he Chairman shall not have authority to alter, amend, modify, add to or subtract from, or change in any way the provisions of this [memorandum]. Any decision rendered by the Chairman shall be final and binding on all parties to that decision." *Id.*

On April 18, 1994, Thomas Holmes, Assistant Secretary, Ohio Valley Resources, Inc., signed the April 1994 Memorandum. Before it was signed, however, he or someone caused the deletion and/or insertion of the following language: in the space provided for identification of the companies for which Ohio Valley Resources, Inc. was a "limited agent," Ohio Valley Resources, Inc. inserted the word "None." *See id.* at 1. The Memorandum stated that the names of the non-signatory corporations that were to be covered by this agreement should be listed in Appendix A. At Appendix A, Ohio Valley Resources, Inc. inserted the word "None." *See id.* at 10. Finally, below the signature line of the Memorandum was language that Ohio Valley Resources, Inc. was acting "As Limited Agent for Parent Corporation and its Non-signatory Coal Mining Subsidiaries." *Id.* at 9. Plaintiff Ohio Valley Resources, Inc. marked over this phrase with "x" 's.

In May, 1995, the Union, alleging that plaintiff KenAmerican Resources, Inc. had violated the terms of the December 16, 1993 Adoption Agreement by failing to provide preferential hiring to Union-favored workers, initiated arbitration before Chairman Usery for final and binding decision to compel plaintiff KenAmerican Resources to comply with the Adoption Agreement and, by incorporation, the December 1993 Agreement. Purportedly acting pursuant to authority vested in him by the several agreements between the Union and the signatory employers, Chairman Usury has conducted an arbitration and on December 14, 1995 filed an interim decision in favor of the Union. *See* Exhibit 13 of Plaintiffs' Reply. The decision directs plaintiff KenAmerican Resources to comply with the terms of the Adoption Agreement and essentially awards the Union three out of every five jobs at KenAmerican's mines. The award, however, leaves for further negotiation and/or arbitration the precise remedies by which the award would be implemented.

## II.

Plaintiffs' complaint and motion for preliminary injunction argue that plaintiff KenAmerican Resources, Inc., did not agree to arbitration because it did not sign either the Adoption Agreement or the December 1993 Memorandum and, therefore, is not legally obligated to be bound by the arbitration process there provided. Plaintiffs acknowledge that the same person, Robert E. Murray, who is the President and Chief Executive Officer and sole shareholder of Ohio Valley Resources, Inc., which did sign these instruments and is bound by their terms, is also the sole shareholder of plaintiff KenAmerican. Nevertheless, no one signed any of these instruments on behalf of KenAmerican, and it argues that there is no actual or apparent agency relationship between it and plaintiff Ohio Valley Resources, Inc. that could bind KenAmerican to an agreement signed by Ohio Valley Resources, Inc. Indeed, as plaintiff points out, KenAmerican was not even incorporated until *after* all the instruments at issue were signed. *See* Plaintiffs' Reply at 16. Therefore, plaintiffs seek

an order enjoining defendant from proceeding with the arbitration, staying further proceedings, and prohibiting the defendant from taking action to enforce the arbitrator's decision. Defendant by its answer and opposition to plaintiff's motion for preliminary injunction invokes the Norris–LaGuardia Act as an effective bar to any order enjoining the arbitration. Defendant contends that because the arbitration constitutes or grows out of a labor dispute, plaintiffs must (but fail to) satisfy the strict requirements of the Act in order to obtain a preliminary injunction. In addition, the defendant has counterclaimed against the plaintiffs and named Mr. Murray as a third-party defendant seeking an order enforcing the arbitrator's award.

### III.

The threshold question is whether, assuming that KenAmerican Resources, Inc. has not agreed to submit to arbitration, the Norris–LaGuardia Act nevertheless applies to any injunction interdicting the arbitration. Section 7 of the Norris–LaGuardia Act states in pertinent part:

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute ... except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

(a) That unlawful acts have been threatened and will be committed ...;

(b) That substantial and irreparable injury to complainant's property will follow

.     .     .     .     .

(d) That complainant has no adequate remedy at law....

29 U.S.C. § 107. The D.C. Circuit has ruled that "an injunction to block an arbitration under a collective bargaining agreement is fully subject to the strictures of the Norris–LaGuardia Act." *In re District No. 1—Pacific Coast District, MEBA,* 723 F.2d 70, 74 n. 2 (D.C.Cir.1983). Plaintiffs contend that this holding does not squarely answer the question of the Norris–LaGuardia Act's applicability because there is no "collective bargaining agreement" in the first place. Plaintiffs' Reply at 17. Therefore, plaintiffs argue, the D.C. Circuit's opinion "does not reach the narrow issue presented to this Court: whether Norris–LaGuardia bars a preliminary injunction to allow this Court to determine *de novo* whether there is any arbitration agreement between the parties." Plaintiffs' Reply at 21.

■ Plaintiffs' proposed distinction between the D.C. Circuit's opinion in *MEBA* and the instant case is without a difference. The arbitration and litigation involve the existence *vel non* of a collective bargaining agreement formed in the context of a strike and threatened strike between the United Mine Workers and coal mining corporations, and therefore "involves" or "grows out of" a "labor dispute." 29 U.S.C. § 107. The pertinent definitions in the Norris–LaGuardia Act are broad and have been interpreted broadly. *See* 29 U.S.C. §§ 113(a), (c). The Supreme Court has observed that "we have long recognized that 'Congress made the definition [of "labor dispute"] broad because it wanted it to be broad,'" and that "we have consistently declined to construe § 13(c) narrowly." *Burlington Northern Railroad Co. v. Brotherhood of Maintenance of Way Employes,* 481 U.S. 429, 441–42, 107 S.Ct. 1841, 1849, 95 L.Ed.2d 381 (1987); *see also Tejidos de Coamo, Inc. v. International Ladies' Garment Workers' Union,* 22 F.3d 8, 11 (1st Cir.1994). Accordingly, the Norris–LaGuardia Act applies to this case.

■ In reaching this conclusion, I have considered plaintiffs' contention that the Norris–LaGuardia Act does not apply in the instant case because the authority to decide whether an arbitrator of a labor dispute has exceeded his authority or whether a party is drawn into an arbitration without consenting to an arbitration are questions of law for ultimate decision by a court. In support of their point of view, plaintiffs rely on Supreme Court rulings that, generally, where the jurisdiction of an arbitrator is at issue, the burden is upon the proponent of the arbitration to establish by "clear and unmistakable"

evidence that the arbitrator has authority to decide his jurisdiction; if the proponent fails to meet this burden, a court will decide *de novo* the question of the arbitrator's jurisdiction. *See First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). However, there was no underlying labor dispute in the *First Options* case and other authorities relied on by plaintiffs relate to commercial arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Commercial arbitration is simply an alternate method of resolving disputes in preference to litigation and for the convenience of the parties and the court. *See, e.g., Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2336–37, 96 L.Ed.2d 185 (1987). Labor arbitration is a substitute, not merely for litigation, but also for self-help, which can take the form of strikes, lockouts, and frequently, violence. *See* 29 U.S.C. § 171(a); *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 249, 90 S.Ct. 1583, 1591–92, 26 L.Ed.2d 199 (1970). The public's interest in arbitration as an alternative to self-help is entitled to great weight, particularly where, as here, plaintiff Ohio Valley Resources, Inc. agreed to arbitration as a means of avoiding a potential strike in all related, existing, and future mining operations. *See supra* at 20–21; Exhibit 2 of Plaintiffs' Motion, ¶ 4(c) (March 24, 1993 Interim Agreement); Exhibit 3 of Plaintiffs' Motion, ¶¶ 1, 3 (March 24, 1993 Memorandum of Understanding). Finally, the principle that a court must decide *de novo* an arbitrator's jurisdiction absent "clear and unmistakable" evidence that the parties intended for the arbitrator to make this decision does not conflict with a ruling that the Norris–LaGuardia Act applies. The Act simply provides the procedure and standards requisite to an injunction in respect of a labor dispute.

## IV.

Plaintiffs do not satisfy the requirements of the Norris–LaGuardia Act for a preliminary injunction. First, "[s]trict adherence to the Act's procedures is not a mere matter of form: A district court has no *jurisdiction* under the Norris–LaGuardia Act to issue a labor injunction without adhering to the explicit terms of the Act." *In re District No. 1—Pacific Coast District, MEBA,* 723 F.2d 70, 76–77 (D.C.Cir.1983). The Act requires, among other things, "the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath." *See* 29 U.S.C. § 107. Plaintiffs did not present any witnesses, and the proffered declarations of Donald Gentry do not satisfy Section 107's requirement of "testimony" in "open court" with "opportunity for cross-examination." Second, plaintiffs' attempt to demonstrate irreparable injury as contemplated by both the Norris–LaGuardia Act and the general equity principles must fail. Although plaintiffs argue that to submit to arbitration is irreparable injury *per se,* this Circuit has ruled that a party submitting to arbitration has suffered no irreparable injury by virtue of that fact. *MEBA,* 723 F.2d at 78. Plaintiffs' claim that arbitration would cause exposure of confidential business information is undermined by the fact that there is prolific arbitration in this industry, engaged in by scores of employer coal companies. Plaintiffs make no showing that exposure of business information by an employer to a union in collective bargaining would be any more burdensome on these plaintiffs than it is on any other coal mining employer. Indeed, counsel for plaintiffs declared at argument that Ohio Valley Resources, Inc. stands ready to participate in arbitration should defendant seek it. Finally, plaintiffs have an adequate remedy at law. They have the right to move to vacate the award when it becomes final. Their concern about the prospect that they may be required to take detrimental action in response to the arbitrator's interim award is premature.

Plaintiffs argue vigorously that a preliminary injunction should issue because they are "likely to prevail on the merits." *See* Plaintiffs' Motion at 5. Plaintiff KenAmerican contends that it did not sign any of the instruments at issue, and no other entity had authority to sign a contract or bind KenAmerican on its behalf. *Id.* at 7–8. Notwithstanding the fact that "likelihood of success on the merits ... does not even appear on the list of findings that must be made to

support an injunction" under the Norris–LaGuardia Act, *see Gilmore v. Intl. Union of Operating Engineers,* 899 F.Supp. 652, 658 (D.D.C.1995), plaintiffs' assertion that KenAmerican is not bound by the December 1993 Agreement is arguably contradicted by the Adoption Agreement, which plaintiff Ohio Valley Resources, Inc. signed and which incorporates the December 1993 Agreement, the relevant part of which states that its terms apply to "*existing, new, or newly acquired nonsignatory* bituminous coal mining operations of the nonsignatory Companies." Exhibit 1 of Defendant's Opposition, ¶ 6. The March Memorandum, which plaintiff Ohio Valley Resources, Inc. signed, also arguably contradicts plaintiff KenAmerican's position here. In this instrument, plaintiff Ohio Valley Resources, Inc. prospectively adopted the December 1993 Agreement on behalf of "any subsidiary or affiliate as of the date of this Agreement, or acquired during its term which may hereafter (during the term of this Agreement) be put into production or use" and also on behalf of "all current and future coal lands and operations of the Employer." *See* Exhibit 3 of Plaintiffs' Motion, ¶¶ 1, 3 (March 1993 Memorandum).

### V.

The accompanying Order will deny the motion for preliminary injunction and provide, nevertheless, that the denial is without prejudice to any motion for temporary or preliminary relief sought by plaintiffs in the event that they are confronted with a demand to hire or fire any employee pursuant to the interim arbitration award, pending decision on anticipated motions for summary judgment.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 11th day of January, 1996, hereby

ORDERED: that plaintiffs' motion for preliminary injunction should be, and is hereby, DENIED WITHOUT PREJUDICE to their application for any temporary or preliminary relief should plaintiffs be required, or under imminent threat of a requirement,

to fire or hire any employee pursuant to the arbitrator's Interim Award.