[No. B139562. Second Dist., Div. Three. Aug. 30, 2000.]

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL NO. 324, AFL-CIO, CLC, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GIGANTE USA, INC., Real Party in Interest.

[No. B139686. Second Dist., Div. Three. Aug. 30, 2000.]

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL NO. 770, AFL-CIO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GIGANTE USA, INC., Real Party in Interest.

568

## COUNSEL

Gilbert & Sackman, Robert A. Cantore and Joseph L. Paller, Jr., for Petitioner United Food and Commercial Workers Union, Local No. 324, AFL-CIO, CLC.

Schwartz, Steinsapir, Dohrmann & Sommers, Laurence D. Steinsapir and Henry M. Willis for Petitioner United Food and Commercial Workers Union, Local No. 770, AFL-CIO.

Wohlner, Kaplon, Phillips, Young & Barsh, Jeffrey S. Wohlner; Robert E. Funk and Nicholas W. Clark for United Food and Commercial Workers International Union, AFL-CIO, as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Barsamian, Saqui & Moody, Ronald H. Barsamian, Michael C. Saqui, Patrick S. Moody, E. Mark Hanna; and Jacob Monty for Real Party in Interest.

## OPINION

**KLEIN, P. J.**—Petitioners United Food and Commercial Workers Union, Local No. 324, AFL-CIO, CLC (Local 324) and United Food and Commercial Workers Union, Local No. 770, AFL-CIO (Local 770) (collectively, the unions) seek writs of mandate to overturn an order denying their respective motions for summary judgment in an action brought by an employer, real party in interest Gigante USA, Inc. (Gigante), for a permanent injunction to enjoin picketing outside Gigante's store.[1]

Before injunctive relief will lie in an action involving or growing out of a labor dispute, the party seeking the injunction must establish, inter alia, "[t]hat the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." (Lab. Code, § 1138.1, subd. (a)(5).)[2]

In resisting summary judgment, Gigante failed to make a showing that law enforcement is unable or unwilling to furnish adequate protection. No triable

---

[1]United Food and Commercial Workers International Union, AFL-CIO, has filed an amicus curiae brief in support of the unions.

[2]All further statutory references are to the Labor Code, unless otherwise indicated.

issue exists in that regard. The evidence established that law enforcement was summoned, responded in a timely manner, protected persons and property, and ensured ingress and egress to and from the premises. On this record, there was neither an inability nor an unwillingness to furnish adequate protection. Therefore, the unions are entitled to summary judgment in Gigante's action for a permanent injunction. We grant the relief requested.

## FACTUAL AND PROCEDURAL BACKGROUND

Gigante is affiliated with a Mexican corporation that operates a chain of retail food stores in Mexico. On May 5, 1999, Gigante opened its first Southern California store in a Pico Rivera shopping center. Gigante is not unionized and, according to the petitions, does not pay union wages to its employees.

Local 770 picketed in front of the store on the evening before its opening and on opening day to protest Gigante's alleged failure to pay union wages and benefits. Local 324 joined the picketing on opening day.[3]

Approximately 75 to 80 people picketed on the eve of the store's opening. According to Gigante's vice-president, the picketers engaged in loud chanting which disrupted the social gathering, and they stood in the way of people trying to enter the parking lot and store.

On opening day, approximately 300 picketers were present. Gigante's vice-president described the union pickets as "a controlled group." To help maintain order, approximately 18 private security guards and about 12 sheriff's deputies were present at the shopping center.

According to declarations Gigante filed in the trial court, the following events occurred on opening day: picketers screamed at customers, some of whom turned away and did not enter the store; the vice-president of the entity which owns the shopping center stated sheriff's deputies had a "tough time" moving the picketers and clearing a path for him to drive his vehicle in front of the store; the "crowd of people" (presumably the protesters) "started pushing the guards" and "seemed out of control"; at one point, the picketers "t[oo]k over the street in front of the store" and the sheriff's department closed down the street; the picketers "charged the store entrance" and were pushed back by Gigante's private security guards with the assistance of sheriff's deputies; and one private security guard was pulled/pushed into

---

[3]Local 770 represents meat department employees, while Local 324 represents other retail food store employees.

the picket line and someone tried to grab his gun but sheriff's deputies intervened.

Two days later, Gigante filed a complaint against the unions for injunctive relief.[4] The trial court issued a temporary restraining order and scheduled a hearing on Gigante's request for a preliminary injunction. Ultimately, however, the parties stipulated to the issuance of a preliminary injunction which essentially limited to two the number of picketers who could come within 20 feet of the store entrance, barred picketers from obstructing vehicles and persons attempting to enter the parking lot and the store, barred picketers from stationing pickets in a fire lane in front of the store and from threatening or assaulting Gigante's employees and customers.[5]

With a few exceptions, it appears that since May 1999, the unions have stationed only about a half-dozen picketers outside the store. One exception was September 3, 1999, when the unions conducted an organizing rally with about 300 people in attendance. There have not been any problems since the parties entered into the stipulated injunction.

### 1. *The enactment of section 1138 et seq.*

After the entry of the preliminary injunction, California enacted new legislation pertaining to injunctions in labor disputes. These new Labor Code provisions (§§ 1138-1138.5) took effect on January 1, 2000. Three provisions are relevant to this writ proceeding.

The first is section 1138, which provides: "No officer or member of any association or organization, and no association or organization, participating or interested in a labor dispute, shall be held responsible or liable in any court of this state for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of those acts."

---

[4] Gigante's complaint is captioned "Verified Complaint for Temporary Restraining Order and Preliminary and Permanent Injunctions and Damages." However, Gigante exclusively sought injunctive relief against the unions. Although helpful to the court, the caption is not considered a part of the pleader's statement of claim. (*Bell v. Tri-City Hospital Dist.* (1987) 196 Cal.App.3d 438, 446 [241 Cal.Rptr. 796].) Further, the issues on summary judgment are framed by the pleadings because it is those allegations to which the motion must respond. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) Therefore, there was no claim for damages to be negated by the unions in seeking summary judgment.

[5] Local 770 also filed a cross-complaint against Gigante in which it sought to enjoin Gigante from, inter alia, interfering with the union members' right to picket peacefully. On June 8, 1999, the trial court denied Local 770's application for a temporary restraining order. However, the writ petitions do not implicate the cross-complaint.

The second pertinent provision is section 1138.1, subdivision (a), which states in relevant part that a court may issue a temporary or permanent injunction in any case involving or growing out of a labor dispute *only* if the court makes *all* of the following findings: "(1) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorized those acts. [¶] (2) That substantial and irreparable injury to complainant's property will follow. [¶] (3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief. [¶] (4) That complainant has no adequate remedy at law. [¶] (5) *That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.*" (Italics added.)

The third relevant statute is section 1138.2, which provides that "[n]o restraining order or injunctive relief shall be granted to any complainant involved in the labor dispute in question who has . . . failed to make every reasonable effort to settle that dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

2. *The unions' motions pursuant to section 1138 et seq.*

In January 2000, relying on the new enactment, the two unions filed separate motions for summary judgment. The unions contended Gigante had not shown that law enforcement was unable or unwilling to furnish adequate protection, and without such a showing no injunction may be had. (§ 1138.1, subd. (a)(5).)

In addition, Local 324 argued it could not be enjoined because even assuming unlawful acts had been threatened or had been committed, Local 324 could not be held responsible for those acts absent a showing by Gigante that Local 324 actually authorized or actually participated in those acts. (§ 1138.) Local 324 also contended Gigante could not be awarded injunctive relief because there was no evidence Gigante had made "every reasonable effort" to settle the labor dispute, as required by section 1138.2.

In addition to seeking summary judgment, Local 770 moved in the alternative to dissolve the preliminary injunction, arguing that under the new Labor Code provisions the injunction was no longer valid.

### 3. *Trial court's ruling.*

Although the trial court tentatively ruled in favor of the unions, on February 28, 2000, the trial court issued an order denying both motions for summary judgment. The trial court concluded the unions had presented evidence "the Sheriff's Department *has provided adequate protection* to [Gigante's] property." (Italics added.) However, the trial court also found Gigante "has presented evidence that the *police may be unable* to provide adequate protection to [Gigante's] property interest in customer access to the store." (Italics added.) Thus, the trial court concluded there was a question of fact regarding law enforcement's ability to furnish adequate protection.

The trial court also rejected the unions' contentions they could not be enjoined on the grounds they had not authorized any unlawful acts that may have occurred during the picketing, and that Gigante had not attempted to resolve the matter as required by section 1138.2.

In the same order, the trial court denied Local 770's request to dissolve the preliminary injunction because in the court's view, "the matter should have been raised in a separate motion pursuant to CCP section 533," and, as the trial court had already determined in the context of the summary judgment ruling, the union failed to show Gigante could not, as a matter of law, meet the requirements for issuance of an injunction under section 1138.1.

### 4. *Writ proceedings.*

The unions filed separate writ petitions challenging the trial court's order denying their respective motions for summary judgment. Local 770's petition also challenges the trial court's order denying its motion to dissolve the preliminary injunction.[6]

Due to the absence of case law construing the recent legislation, we directed the issuance of an order to show cause.

### CONTENTIONS

The unions contend, inter alia, that this court should direct the superior court to grant their motions for summary judgment because Gigante failed to

---

[6]In addition to seeking writ review of the order denying its request to dissolve the preliminary injunction, Local 770 has appealed that order. (Code Civ. Proc., § 904.1, subd. (a)(6).)

show that public authorities are unable or unwilling to furnish adequate protection; Gigante has no evidence of union responsibility for any unlawful acts that may have been threatened or committed; and Gigante cannot establish it made every reasonable effort to resolve the labor disputes.

Gigante argues the trial court properly denied the summary judgment motions because there exist triable issues of material fact with respect to whether the unions authorized any unlawful acts; whether reasonable efforts were made to resolve the labor dispute; and whether the public officers charged with the duty to protect Gigante's property are unable or unwilling to furnish adequate protection.

## DISCUSSION

### 1. *Constitutional protection for peaceful picketing.*

■ We begin with the premise that although acts of violence or acts amounting to physical intimidation will be enjoined, peaceful picketing is constitutionally protected as an incident of free speech. (*McKay v. Retail Auto. S.L. Union No. 1067* (1940) 16 Cal.2d 311, 319-320 [106 P.2d 373].) It is well established "that 'peaceful picketing is an activity subject to absolute constitutional protection in the absence of a valid state interest justifying limitation or restriction.'" (*United Farm Workers of America v. Superior Court* (1976) 16 Cal.3d 499, 504 [128 Cal.Rptr. 209, 546 P.2d 713].) To justify such limitation or restriction of a union's right of free speech, an employer must demonstrate a "*compelling public interest.*" (*In re Berry* (1968) 68 Cal.2d 137, 154 [65 Cal.Rptr. 273, 436 P.2d 273], italics added.)

### 2. *Standard of review.*

■ As stated in *PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877], summary judgment "motions are to expedite litigation and eliminate needless trials. [Citation.] They are granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.]"

A defendant meets its burden upon such a motion by negating an essential element of the plaintiff's case, or by establishing a complete defense, or by demonstrating the absence of evidence to support the plaintiff's case. Once the moving defendant has met its initial burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. (*PMC, Inc. v. Saban Entertainment, Inc., supra,* 45 Cal.App.4th at p. 590;

*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [50 Cal.Rptr.2d 785].)

We review the trial court's ruling on a motion for summary judgment under the independent review standard. (*Rosse v. DeSoto Cab Co.* (1995) 34 Cal.App.4th 1047, 1050 [40 Cal.Rptr.2d 680].) The interpretation of a statute likewise is a question of law for this court's independent determination. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Harbor Fumigation, Inc. v. County of San Diego Air Pollution Control Dist.* (1996) 43 Cal.App.4th 854, 859 [50 Cal.Rptr.2d 874].)

Here, the defendant unions' theory on summary judgment was that Gigante's action for a permanent injunction lacked merit because Gigante could not satisfy the criteria for a permanent injunction under section 1138.1. In particular, the unions contended there was no evidence of law enforcement's inability or unwillingness to protect Gigante's property. That is our focus here.

3. *Applicability of newly enacted statutory scheme.*

■ As a preliminary matter, we address the application of the new legislation to the preexisting injunction.

Section 1138 et seq., setting forth criteria for the issuance of an injunction in any case involving or growing out of a labor dispute, took effect on January 1, 2000. The new statutory scheme is applicable even though it became operative after the preliminary injunction was issued in May 1999. The rationale is that because relief by injunction operates in futuro, the propriety of an injunction will be scrutinized pursuant to a statute that arose after the issuance of the injunction. (*M Restaurants, Inc. v. San Francisco Local Joint Exec. Bd. Culinary etc. Union* (1981) 124 Cal.App.3d 666, 674 [177 Cal.Rptr. 690]; *Sontag Chain Stores Co. v. Superior Court* (1941) 18 Cal.2d 92, 94-95 [113 P.2d 689].)

As explained in *M Restaurants, Inc.*, "[t]he preliminary injunction is a decree continuing in nature, directed at future events. It creates no right, but merely assumes to protect a right from unlawful and injurious interference [citations]. The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action [citation]. Therefore, when it is shown that ' "there has been a change in the controlling facts upon which the injunction rested, or *the law has been changed, modified or extended*, or where . . . the ends of justice would be

served by modification," ' the trial court has the inherent power to modify or vacate the injunction [citation]." (*M Restaurants, Inc. v. San Francisco Local Joint Exec. Bd. Culinary etc. Union, supra*, 124 Cal.App.3d at p. 674.)

Thus, once section 1138 et seq. took effect at the beginning of this year, the unions were entitled to invoke the new law as a basis for invalidating the existing preliminary injunction and for obtaining summary judgment in Gigante's action for a permanent injunction.[7] The unions promptly did so. Within the first month the new law was on the books, the unions, relying on the new enactment, filed their motions for summary judgment.

4. *Unions established the absence of evidence to support Gigante's claim that law enforcement was unable or unwilling to protect its property.*

As set forth above, section 1138.1 provides that before an injunction may issue in a case involving or growing out of a labor dispute, *all five elements must be satisfied.* The focus of this controversy is the fifth element, namely, "[t]hat the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." (§ 1138.1, subd. (a)(5).) If there is no evidence that law enforcement is unable or unwilling to protect Gigante's property, the unions are entitled to judgment in their favor.

A defendant may obtain summary judgment by "point[ing] to the absence of evidence to support the plaintiff's case. When that is done, the burden shifts to the plaintiff to present evidence showing there is a triable issue of material fact. If the plaintiff is unable to meet [its] burden of proof regarding an essential element of [its] case, all other facts are rendered immaterial. [Citations.]" (*Leslie G. v. Perry & Associates, supra*, 43 Cal.App.4th at p. 482, italics omitted.)

Here, as defendants moving for summary judgment, the unions cited the absence of evidence that law enforcement was unable or unwilling to protect Gigante's property. According to the unions, the evidence showed the Los Angeles County Sheriff's Department was present whenever mass picketing occurred and controlled the situation, and there was no indication law enforcement would not respond when called. At that juncture, the burden shifted to Gigante to present evidence showing a triable issue of material fact

---

[7]The fact the unions had agreed to the issuance of the preliminary injunction in May 1999 was not a waiver by the unions of any statutory protections that might be enacted in the future. (Code Civ. Proc., § 533 [injunction modifiable upon a change in the law upon which the injunction was granted].)

exists concerning law enforcement's inability or unwillingness to protect Gigante's property. (*Leslie G. v. Perry & Associates, supra,* 43 Cal.App.4th at p. 482.)

Before we examine the evidence offered by Gigante to show that law enforcement is *unwilling* or *unable* to furnish adequate protection, we discuss what is contemplated by those terms.

 a. *Law enforcement's alleged inability to furnish adequate protection within the meaning of section 1138.1, subdivision (a)(5).*

As a preliminary matter, Gigante does not claim law enforcement is "unwilling" to furnish it with adequate protection. Indeed, it appears a large number of sheriff's deputies were present during the sizeable rallies the unions held outside the Gigante store.

Thus, the only real question is whether there is any evidence law enforcement is "unable" to furnish adequate protection. To answer the question, it is necessary to determine what the Legislature meant when it used the term "unable." No California court has yet interpreted this provision. However, the new Labor Code sections at issue are patterned after the federal Norris-LaGuardia Act (29 U.S.C. § 101 et seq.), which was enacted in 1932, and section 1138.1, subdivision (a)(5), is identical to the language of the federal statute from which it is derived, 29 United States Code section 107(e).[8]

■ It is well settled that "[w]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation. This rule is applicable to state statutes which are patterned after federal statutes." (*Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905].) Our Supreme Court has "frequently referred to such federal precedent in interpreting parallel language in state labor legislation." (*Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal.Rptr. 507, 526 P.2d 971].)

Therefore, we look to federal law for guidance.

---

[8] Title 29 United States Code section 107 states: "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, . . . except after findings of fact by the court, to the effect— [¶] . . . [¶] (e) *That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.* . . ." (Italics added.)

b. *Federal courts' strict construction of Norris-LaGuardia Act.*

The Norris-LaGuardia Act "prohibits any federal court from issuing an injunction in almost any 'labor dispute.' " (*Reuter v. Skipper* (9th Cir. 1993) 4 F.3d 716, 718.) That act of Congress "was based upon a recognition of the fact that the preservation of order and the protection of property in labor disputes is in the first instance a police problem, belonging to the executive rather than the judicial side of the government, and its whole intent and purpose was to remove the courts from that field, except in cases where the peace authorities failed or refused to act." (*Heintz Mfg. Co. v. Local No. 515 of United Automobile Workers* (E.D.Pa. 1937) 20 F.Supp. 116, 116-117.)

The United States Supreme Court has observed the language of the Norris-LaGuardia Act "is broad because Congress was intent upon taking the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act." (*Marine Cooks v. Panama S. S. Co.* (1960) 362 U.S. 365, 369 [80 S.Ct. 779, 783, 4 L.Ed.2d 797].) The act's declaration of public policy states the individual worker should have "full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" (29 U.S.C. § 102.)

In furtherance of that end, federal courts have strictly interpreted the statutory requirements. (See, e.g., *Cimarron Coal Corp. v. District No. 23, United Mine Wkrs.* (6th Cir. 1969) 416 F.2d 844, 846; *In re Dist. No. 1—Pac. Coast Dist., Marine Eng'rs* (D.C. Cir. 1983) 723 F.2d 70, 76-77 [232 App.D.C. 367]; *Kenmerican Resources v. Intern. Union, U.M.W.A.* (D.D.C. 1996) 911 F.Supp. 19, 23.) Such an approach is consistent with 29 United States Code section 101, which states no injunction shall issue in a case involving or growing out of a labor dispute, "except in a strict conformity with the provisions of this chapter." Thus, for a complainant to obtain an injunction under Norris-LaGuardia, there must be a proper showing that law enforcement is unwilling or unable to provide adequate protection. (29 U.S.C. § 107(e).)

In *Cimarron Coal Corp. v. District No. 23, United Mine Wkrs., supra,* 416 F.2d 844, the Sixth Circuit vacated an injunction on the ground the record failed to demonstrate either inability or unwillingness of state law enforcement to respond. (*Id.* at p. 846.) In *Cimarron,* union workers conducted mass

picketing and obstructed employees' vehicles. (*Id.* at p. 845.) The employer wrote the state police and local sheriff asking for protection. (*Ibid.*) "The sheriff and some state police did appear and some of the employees did go in to work." (*Ibid.*) *Cimarron* found although "there was something less than a complete mobilization of law enforcement" (*ibid.*), there was "no failure on the part of law enforcement officials to respond, no testimony from any law enforcement official . . . pertaining to any breakdown of local or state law enforcement, and no property damage or physical assault upon anyone." (*Ibid.*)

Similarly, in *Carter v. Herrin Motor Freight Lines* (5th Cir. 1942) 131 F.2d 557, the appellate court reversed an injunction, even though it agreed "the evidence support[ed] the trial court's finding[] that there was violence" of an unspecified nature. (*Id.* at p. 562.) *Carter* explained the statutory provision requiring a finding that local officials are unwilling or unable to provide adequate protection "was not written in the act as a merely perfunctory gesture, [and] it may not be perfunctorily complied with. It expresses the legislative conviction that acts of violence and breaches of the peace in connection with labor disputes, which, and not the disputes themselves, are enjoinable under the act, ought not to be relieved against by injunction unless the local authorities whose duty it is to keep the peace have first been resorted to, and have either advised that they could not or would not keep it or advising that they could and would, have failed through inability or unwillingness to do so." (*Id.* at p. 561.)

In a case upholding an injunction, the evidence showed the police, although willing, were unable to afford adequate protection, as established by testimony " 'detailing incidents of mass picketing, physical assault, window breaking, tire slashing, blocking of plaintiffs' driveways, and threatening.' " (*Charles D. Bonanno Linen Service v. McCarthy* (1st Cir. 1976) 532 F.2d 189, 190.)

 c. *Interpretation of "inability or unwillingness" within the meaning of section 1138.1, subdivision (a)(5).*

We are mindful that we are the first appellate court in California to construe section 1138.1. ■ Therefore, it is our duty to divine from the federal authorities the proper interpretation to be given to the statutory requirement that law enforcement is "unable or unwilling to furnish adequate protection." (§ 1138.1, subd. (a)(5).)

Although in vacating an injunction, the Sixth Circuit in *Cimarron* commented there had been no "breakdown of local or state law enforcement"

(*Cimarron Coal Corp. v. District No. 23, United Mine Wkrs., supra,* 416 F.2d at p. 845), we flatly reject any suggestion that a breakdown of law enforcement either is, or should be, the standard in California. A "breakdown of law enforcement" implies a state of anarchy, and that cannot be the standard for issuance of an injunction under section 1138.1. Given that this is the first California decision to apply section 1138.1, it is *premature* to articulate a bright-line definition of "unable or willing." Instead, we hold that where law enforcement has been summoned, responds in a timely fashion, protects persons from injury and property from damage, and ensures ingress and egress to and from the premises, there is neither an unwillingness nor an inability to furnish adequate protection. Conversely, where law enforcement is unwilling or unable to afford these protections and services, an injunction may lie.

We now examine whether Gigante, in resisting summary judgment, made a sufficient showing that law enforcement was unwilling or unable to provide adequate protection.

 d. *No showing of inability by law enforcement to protect Gigante's property.*

 We observe the trial court did not find law enforcement personnel were actually "unable or unwilling to furnish adequate protection" as the statute requires. (§ 1138.1, subd. (a)(5).) Rather, it denied summary judgment on the ground "the police *may be unable* to provide adequate protection to [Gigante's] property interest in customer access to the store." (Italics added.) Guided by the strict construction given to section 1138.1's antecedent in the Norris-LaGuardia Act, it appears the trial court's ruling fell short of what section 1138.1 requires for injunctive relief. In any event, "the trial court's stated reasons for its ruling do not bind us. We review the ruling, not its rationale." (*California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724, 731 [284 Cal.Rptr. 687].)

All the declarations proffered by Gigante involve the events that took place on the eve and day of the Gigante store's grand opening. In general, they show that, while sheriff's deputies had to control the picketers on a few occasions, the deputies were able to keep things under control. There is no evidence anyone was injured or that Gigante suffered any property damage.

The evidence cited by the trial court in support of its ruling does not reflect an inability on the part of law enforcement to afford protection. For example, in a declaration cited by the trial court, a security guard stated: "At 11:00 a.m. [on opening day] the rally got out of control. The union protestors

moved away from the street and charged the store entrance. We pushed them back *and when the L.A. Sheriff's Dept. saw this they came to our support and backed us up.*" (Italics added.)

The declaration of a vice-president of Gigante stated, inter alia: "The union pickets were a controlled group. . . . At one point, the Sheriff's Department closed off the roadway in front of the store—the union pickets filled the entire area. . . . [¶] Just before noon, the Fire Dept. arrived. . . . When the Fire Dept. arrived, the union pickets moved all together into the parking lot."

The declaration of an officer of the corporation which owns the property stated: "I was driving in front of the store and I was surrounded by the union pickets . . . . [¶] The Sheriff's officers were having a tough time moving the pickets and clearing a path for me. . . . The sheer number of union pickets made it difficult for customers to come into the store."

These declarations do not indicate an inability by law enforcement to handle the situation. To the contrary, the declarations show the sheriff's department was both willing and able to provide "adequate protection" (§ 1138.1, subd. (a)(5)), including access to the premises.

We recognize the declarations describe an incident in which protesters allegedly tried to grab the gun of a Gigante security guard, shoved him, tried to pull him into the picket line and tore his shirt. However, even in that instance, "[t]he Sheriff's Deputies blocked them back and [the security guard] was able to keep them from getting his gun."

In sum, there was no showing by Gigante that law enforcement officers were either unwilling or unable to provide adequate protection. Instead, the evidence established that the sheriff's department was present at the scene in force, protected persons and property, and ensured ingress and egress. On this record, the trial court erred in concluding there was a triable issue of material fact with respect to law enforcement's ability to protect Gigante's property and in denying the unions' motions for summary judgment.[9]

---

[9]Section 1138.1, subdivision (b) requires notice to be given to all persons against whom relief is sought, as well as to "the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property." Because the preliminary injunction here preceded the enactment of the statute, Gigante did not comply with that procedural requirement. Further, in resisting the motions for summary judgment, Gigante did not obtain a declaration from law enforcement officials. However, in future cases, the party seeking injunctive relief must give notice to the

### 5. *Remaining issues not reached.*

Because Gigante failed to raise a triable issue of material fact with regard to section 1138.1, subdivision (a)(5), all other facts are rendered immaterial. (*Leslie G. v. Perry & Associates, supra,* 43 Cal.App.4th at p. 482; *Shively v. Dye Creek Cattle Co.* (1994) 29 Cal.App.4th 1620, 1627 [35 Cal.Rptr.2d 238] [if defendant negates an essential element of plaintiff's case, no amount of factual conflict on other aspects of case precludes summary judgment].) Accordingly the unions are entitled to summary judgment. Therefore, it is unnecessary to examine whether the unions committed or authorized any unlawful activity (§ 1138.1, subd. (a)(1)) or whether Gigante made every reasonable effort to settle the labor dispute before seeking injunctive relief (§ 1138.2).

The entitlement of the unions to summary judgment also obviates any need to address Local 770's contention that the preliminary injunction should have been dissolved.

## DISPOSITION

The order to show cause is discharged. Let a writ of mandate issue, directing respondent to vacate its order denying the unions' motions for summary judgment and to enter a new order granting their motions, thereby disposing of Gigante's action for a permanent injunction.

The unions are awarded their costs. (Cal. Rules of Court, rule 56.4(a).)

Croskey, J., and Aldrich, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied November 15, 2000.

---

appropriate law enforcement agency. Thus, the statute contemplates input from law enforcement officials which will assist the trial court in determining law enforcement's willingness and ability to provide adequate protection in a given fact situation.