Filed 9/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 39,<br><br>　　Defendant and Appellant,<br><br>v.<br><br>MACY'S, INC.,<br><br>　　Plaintiff and Respondent. | A161959, A163029<br><br>(San Francisco City & County Super. Ct. No. CGC-20-587033) |

Plaintiff Macy's, Inc. (Macy's) sued Defendant Stationary Engineers Local 39 (Local 39) for damages and injunctive relief based on allegations that Local 39 had engaged in unlawful conduct in connection with its picketing activities outside Macy's San Francisco store.  Local 39 filed a special motion to strike Macy's complaint pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP statute), which the trial court denied in part. After Macy's filed an amended complaint, Local 39 filed a second anti-SLAPP motion, which the trial court denied.

Local 39 appealed both orders, and we consolidated the two appeals for all purposes.  Local 39 argues that the trial court should have granted its anti-SLAPP motions in full because Macy's complaints were based on protected conduct and Macy's failed to demonstrate a probability of prevailing on its claims.

1

We need not address the merits of Local 39's appeal of the denial of its second anti-SLAPP motion because we agree with it in the first appeal that the trial court should have granted its first anti-SLAPP motion in full and ordered the entire complaint stricken.

## BACKGROUND

Macy's runs a department store in San Francisco. Local 39 represents a group of employees who work at the store fixing mechanical issues. After its last collective bargaining agreement with Macy's expired and the parties were unable to agree on a new agreement, Local 39 called a strike and began picketing at the store in September 2020.

In October 2020, Macy's filed a five-page complaint against Local 39. It alleged that Local 39 had engaged in a continuing and escalating pattern of unlawful misconduct at the store that included (1) mass picketing at the store's five entrances; (2) blocking ingress and egress at two entrances; (3) disturbing the public through loud and boisterous conduct; (4) creating an unsafe and threatening environment in the community; and (5) damaging property by clogging a drainpipe. Macy's alleged that Local 39 had authorized, directed, and ratified the misconduct to force Macy's to accede to its demands in the labor dispute. Macy's asked for a temporary restraining order and preliminary and permanent injunctions preventing Local 39 from picketing at any of the store's entrances, blocking ingress or egress, disturbing the public, threatening public safety, or damaging property. Macy's also asked for compensatory and punitive damages.

On November 20, 2020, Macy's moved for leave to amend its complaint because Local 39 would not stipulate to the filing of an amended complaint. Local 39 filed its first anti-SLAPP motion against the original complaint on November 24, 2020. Local 39 argued the complaint alleged acts in furtherance of its right to free speech on a public issue because its statements and conduct occurred during and concerned a labor dispute. It then argued Macy's could not establish a probability of prevailing on the merits because, among other things, the complaint did not satisfy Labor Code section 1138, which establishes a heightened standard of proof for claims against organizations arising out of labor disputes.[1]

During the briefing on the anti-SLAPP motion, Macy's submitted declarations from its employees that expanded upon the allegations in the complaint. One employee stated that on one occasion, a picketer hit her on the shoulder with a sign. Another employee said a picketer had followed him and blasted a siren from a bullhorn in his ears. A third employee described how picketers stood between customers and the store's entrances, causing the customers to push through the picketers, and stood in the receiving dock area, preventing the delivery of goods to the store. The employee stated that picketers created loud and obnoxious noise through loud music, compressed air horns and whistles, sirens on electronic bullhorns, and banging on drums and pieces of metal that caused employees to have migraines, dizziness, disorientation, and hearing loss. This employee said

---

[1] Undesignated statutory references are to the Labor Code.

3

the picketers blasted customers and employees, including himself, directly in the face with the compressed air horn. The employee described security camera footage that showed picketers looking into a drainpipe shortly before a sewage backup occurred in the pipe, which was likely caused by a T-shirt and water bottle placed in the drainpipe. This employee further stated that water ceased flowing in some store restroom faucets because certain wires were cut and that Local 39 members had unique knowledge about the wires that activated the faucets. The employee also accused the picketers of damaging a planter by banging a piece of metal against it and throwing small rocks into several doorways that caused the doors to jam, necessitating repair.

After a hearing on December 30, 2020, the trial court granted Local 39's anti-SLAPP motion in part. The court ruled that Macy's could not show a probability that it would prevail on the complaint's allegation that Local 39 engaged in misconduct through mass picketing and its prayer for relief requesting an injunction preventing Local 39 from allowing any picketing at the store, so it ordered those aspects of the complaint stricken. But the trial court also ruled that the complaint's claims based on obstruction of ingress and egress, unreasonable noise, property damage, striking an employee with a sign, and blasting of a bullhorn in an employee's ears had minimal merit and could proceed.

That same day, the trial court granted Macy's leave to amend its complaint. Local 39 then filed a notice of appeal of the

4

anti-SLAPP ruling. A few days after that, Macy's filed an amended complaint, which omitted the language from the original complaint that the trial court had ordered stricken and added details that had previously been set forth only in the various declarations.

Local 39 responded by filing a second anti-SLAPP motion directed at the amended complaint. The trial court denied this motion on two grounds: first, it viewed the motion as an untimely motion for reconsideration of its ruling on the first anti-SLAPP motion; and second, it determined that Local 39's appeal of the ruling on the first anti-SLAPP motion stayed all further proceedings on the merits of the causes of action in the original complaint. Local 39 moved for reconsideration of the ruling on the second anti-SLAPP motion, but the trial court denied that motion as well.

## DISCUSSION

### I. Applicable legal principles and standard of review

"The anti-SLAPP statute is 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." ([Code Civ. Proc.,] § 425.16, subd. (b)(1).)' [Citation.]

"Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.]  Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008–1009.)

"We review de novo the grant or denial of an anti-SLAPP motion.  [Citation.]  We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.  [Citations.]  In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based.  [Citations.]  We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

## II.    First anti-SLAPP motion

Macy's does not dispute that the trial court correctly determined that the complaint arises from protected activity because its allegations concern picketing.  We therefore proceed directly to the second anti-SLAPP step and consider whether the trial court correctly concluded that Macy's established that the claims in the complaint have minimal merit.  Macy's has not

6

appealed from the trial court's order that some of the claims in the complaint be stricken because they lacked minimal merit. We therefore consider only the claims that the trial court allowed to proceed. Local 39 offers several different reasons why Macy's cannot establish that its claims have minimal merit, but we need only address one—the argument that the trial court misstated and misapplied the standard of proof specified in section 1138.[2]

"To satisfy [the anti-SLAPP] prong-two showing, the plaintiff must present credible evidence that satisfies the standard of proof required by the substantive law of the cause of action the anti-SLAPP motion challenges." (*De Havilland v. FX Networks, LLC* (2018) 21 Cal.App.5th 845, 856.) Where the law requires proof by a higher standard for a cause of action, such as clear and convincing evidence, a court must evaluate the plaintiff's evidentiary showing bearing in mind the higher standard of proof. (*Ibid.*; *Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451–1452; cf. *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011 ["an appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard"].)

Section 1138 is one such a law. That statute states in full, "No officer or member of any association or organization, and no association or organization, participating or interested in a labor

---

[2] We deny as unnecessary Local 39's request for judicial notice of a ruling by an administrative law judge in a related proceeding before the National Labor Relations Board, as that request is relevant only to arguments that we need not reach.

7

dispute, shall be held responsible or liable in any court of this state for the unlawful acts of individual officers, members, or agents, *except upon clear proof of actual participation in, or actual authorization of those acts*." (§ 1138, italics added.) This statute was modeled after section 6 of the federal Norris-LaGuardia Act (29 U.S.C. 101 et seq.), which is substantively identical except that it permits the imposition of liability "upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof." (29 U.S.C. § 106; *Waremart Foods v. United Food and Commercial Workers Union, Local 588* (2001) 87 Cal.App.4th 145, 156 (*Waremart*).)

"[T]he simple concern of Congress [behind the federal statute] was that unions had been found liable for violence and other illegal acts occurring in labor disputes which they had never authorized or ratified and for which they should not be held responsible. Congress discerned a tendency in courts to blame unions for everything occurring during a strike. Nor was the problem necessarily limited to labor unions. The straightforward answer was [29 United States Code section 106], with its requirement that when illegal acts of any individual are charged against one of the major antagonists in a labor dispute—whether employer or union—the evidence must clearly prove that the individual's acts were authorized or ratified." (*Ramsey v. Mine Workers* (1971) 401 U.S. 302, 310, fn. omitted.) The Supreme Court has clarified that the federal statute's " 'clear proof' " standard means " 'clear, unequivocal, and convincing proof' " that

8

persuades "by a substantial margin," which is more than the usual civil standard of a bare preponderance of the evidence but less than the criminal standard of proof beyond a reasonable doubt. (*Mine Workers v. Gibbs* (1966) 383 U.S. 715, 737 (*Gibbs*).) The Legislature's express purpose for section 1138 was to adopt a rule similar to the federal law. (*Waremart*, *supra*, 87 Cal.App.4th at p. 156.)

It is undisputed here that Local 39 is an organization participating or interested in a labor dispute. The only questions are whether the trial court applied the correct standard of proof when considering Macy's evidentiary showing and whether it did so correctly.

Local 39 first argues that the trial court erroneously ruled that Local 39's request that it hold Macy's to the clear proof standard in section 1138 was asking the court to apply an unrealistically high standard. This argument is based on the trial court's statements that it rejected Local 39's argument that Macy's evidentiary showing was insufficient to show the requisite clear proof of Local 39's participation in or authorization of the alleged unlawful conduct, and that Local 39 "would have the Court impose an unrealistically high standard of proof." Local 39 reads these statements as meaning Macy's did not have to show clear proof of Local 39's participation at the second anti-SLAPP step. Macy's agrees, although it contends this correctly states the law.

As explained, *ante*, the standard of proof affects the showing a plaintiff must make in anti-SLAPP litigation, with a

9

higher standard of proof requiring a greater evidentiary showing. (*De Havilland v. FX Networks, LLC*, *supra*, 21 Cal.App.5th at p. 856.) Macy's need not prove its case in the sense that it need not disprove any contrary evidence from Local 39. But Macy's must present evidence that, if credited, would satisfy the higher standard of clear proof, as required under section 1138. The trial court's statement of the standard was consistent with this principle. Read in context, the trial court did not mean that the clear proof standard was unrealistically high or that Macy's did not need to submit prima facie evidence that would satisfy it. Rather, the trial court meant merely that Local 39's position that Macy's had not made a prima facie showing of clear proof was too exacting, and that Macy's evidence satisfied the standard in this case. The trial court therefore used the correct standard of proof.

The trial court nevertheless erred in applying this standard to Macy's claims and evidentiary showing. The trial court's reasoning, which Macy's endorses on appeal, began from the premise that Macy's did not need to provide evidence of a direct order from Local 39 to engage in misconduct in order to hold it liable, implying that circumstantial proof was sufficient. The trial court drew this principle from *Security Farms v. International Broth., Warehousemen & Helpers* (9th Cir. 1997) 124 F.3d 999, 1013–1014 (*Security Farms*). In that decision applying the federal model for section 1138, the court held that the record supported the trial court's finding that the plaintiff established clear proof of a union's participation in certain misconduct, despite the absence of evidence of a direct order to

10

engage in misconduct. (*Id.* at pp. 1013–1014.) The court found sufficient evidence that (1) the union's leaders committed unlawful acts themselves or were often present when the unlawful acts were committed; (2) the union knew of its leaders' actions, did not discipline them, and allowed them to keep their positions; and (3) the union did not always act to prevent or curtail the wrongful conduct. (*Id.* at p. 1014.)

Applying *Security Farms*, the trial court here concluded that a trier of fact could readily infer that Local 39 had knowledge of the alleged unlawful acts and did not always act to prevent or curtail it. As evidence supporting such an inference, the trial court cited Local 39's admission that it called the strike, the pervasive and repeated nature of the actions over the course of 75 days, and a record of complaints and other communications between Macy's and Local 39. The trial court further explained at the hearing that Local 39's argument about the lack of authorization was more persuasive as to single instances of misconduct, such as the incident in which a picketer struck an employee on the shoulder with a sign. But it found that for the repeated conduct over the course of the 75-day strike that involved seemingly concerted behavior, Macy's evidence supported an inference that Local 39 itself authorized the activity.

The trial court ultimately allowed Macy's to proceed on its claims based on five categories of misconduct: (1) obstruction of ingress and egress; (2) unreasonable noise; (3) property damage from the sewer backup, damage to restrooms, throwing rocks at

11

doors, and banging a piece of metal on a planter; (4) hitting an employee with a sign; and (5) blasting a bullhorn directly in an employee's ears. But three of these categories—the property damage, the battery with the sign, and the blasting of the bullhorn—did not involve repeated and pervasive conduct. Both involved actions that Macy's alleged happened only in single or a few instances. Even by the trial court's own rationale, the inference of authorization that might arise from pervasive misconduct repeated over a long period cannot save these claims, so Macy's did not make a prima facie showing that would support a judgment in its favor on them.

Macy's evidence also does not constitute clear proof as to any of these claims because of a complete lack of evidence of Local 39's actual involvement. Circumstantial proof of actual participation or actual authorization can satisfy the statute. (*James R. Snyder Co. v. Edward Rose & Sons* (6th Cir. 1976) 546 F.2d 206, 209 [construing federal statute].) But such circumstantial evidence must nevertheless be " 'clear, unequivocal, and convincing proof.' " (*Gibbs, supra,* 383 U.S. at p. 737; *Snyder,* at p. 209). Proof of this sort requires something more than evidence of unlawful acts by Local 39's members, even in groups and over a substantial period of time, or Local 39's failure to take measures to prevent such acts; " 'there must be evidence showing some definite and substantial connection' " between Local 39 and the unlawful acts Macy's alleged. (*Fry v. Airline Pilots Ass'n, Intern.* (10th Cir. 1996) 88 F.3d 831, 842, italics omitted.)

12

The only evidence Macy's offered to show a definite connection between Local 39 and the unlawful acts was that Local 39 called the strike and that misconduct took place during the picketing over a substantial period of time. This case is therefore unlike *Security Farms* because Macy's submitted no evidence that union leaders of any type were present during the alleged actions or knew about them, much less evidence that the leaders actually participated in the unlawful actions. (*Security Farms, supra*, 124 F.3d at p. 1014; see also *Gibbs, supra*, 383 U.S. at p. 738 [no proof of union's authorization or participation in violence where union representative was not present at the site during the violence and violence subsided when he returned].) Based on the evidentiary record Macy's has provided, there is nothing to suggest that Local 39 itself actually approved of the alleged unlawful actions, as opposed to Local 39's rank-and-file members undertaking the actions on their own. While an inference that Local 39 actually authorized unlawful acts based on the mere existence of a long strike that involved pervasive use of loud noisemaking devices or repeated blocking of store entrances might satisfy a preponderance of the evidence standard, such an inference does not constitute "clear proof" sufficient to survive the second prong of the anti-SLAPP test. (*Gibbs, supra*, 383 U.S. at p. 741 ["An 'impression' is too ephemeral a product to be the result of 'clear proof' "].)

The trial court cited a record of complaints and communication between Macy's and Local 39 as evidence supporting Macy's complaint. But we have been unable to find,

13

and Macy's has not cited, any evidence in the record to substantiate the trial court's statement. One of Macy's employees declared that he and other employees asked the picketers "every day" to keep back from the store's entrances and requested multiple times that they lower the volume of their activities. But speaking with picketers is not equivalent to speaking with Local 39; to establish the latter, Macy's needed to submit evidence that it spoke to an officer, business agent, or other officer with responsibility for the organization. Without evidence that the picketers the employee spoke to were Local 39 leaders of some sort, Macy's conversations with picketers do not tend to show that the organization itself actually authorized any misconduct.

The need for evidence directly tying Local 39 to the behavior Macy's complains of is not a mere formality. Section 1138, like its federal counterpart, exists to prevent courts from holding a union liable for misconduct by its members during a strike without clear proof that the union itself actually approved the misconduct. (*Waremart*, *supra*, 87 Cal.App.4th at p. 156; *Ramsey v. Mine Workers*, *supra*, 401 U.S. at p. 310.) Thus, Local 39 cannot be held responsible for the actions of its members on the picket line without some indication that Local 39 itself actually authorized the actions. Moreover, the individuals on the picket line who committed the various actions alleged may not have been members of Local 39 at all. Local 39 submitted a declaration stating that members of other unions and the general public joined Local 39 members in a showing of solidarity with

14

the union. The potential presence of non-members on the picket line makes it essential that Macy's tie the alleged misconduct to Local 39 itself to prove its claims have minimal merit.

Our conclusion that Macy's evidentiary showing falls short of the clear proof standard does not mean that the standard is impossible to meet in anti-SLAPP cases, as Macy's contends. Macy's presumably has long known who Local 39's leaders are and could recognize them on the picket line. A simple declaration attesting to a leader's participation in picketing in front of an entrance or using a loud noisemaking device or, at a minimum, a leader's presence at the picketing during such actions would have satisfied the statute. If Macy's did not have such evidence but believed it existed, it could have requested limited discovery to obtain it. (Code Civ. Proc., § 425.16, subd. (g).)

Macy's also could have submitted evidence that it complained directly to Local 39's leaders about the misconduct, which would have established Local 39's knowledge of the alleged misconduct. Section 1138, unlike its federal counterpart, does not permit imposition of liability based on clear proof that an organization ratified misconduct, so this would not necessarily permit the imposition of liability for misconduct pre-dating the communication. (Compare § 1138 [requiring clear proof of actual participation or actual authorization] with 29 U.S.C. § 106 [requiring clear proof of actual participation, actual authorization, or ratification after actual knowledge]; see also Assem. Comm. On Labor and Employment, Rep. on Assem. Bill. No. 1268 (1999–2000 Reg. Sess.) Apr. 21, 1999, at p. 6 [noting the

15

absence of the ratification provision].)  But continued misconduct after such complaints could support an inference that Local 39 approved of and actually authorized the further misconduct.

## III.   Second anti-SLAPP motion

Because the trial court should have granted Local 39's first anti-SLAPP motion in full, it is unnecessary to discuss the merits of Local 39's second anti-SLAPP motion directed at the amended complaint.  Had the trial court granted the first motion, Macy's would not have been allowed to file the amended complaint, so Local 39 would not have needed to file a second anti-SLAPP motion against it.  (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 676 ["Although the anti-SLAPP statute does not specifically state it, a plaintiff whose complaint is stricken by a successful anti-SLAPP motion cannot try again with an amended complaint. There is no such thing as granting an anti-SLAPP motion with leave to amend"].)

## DISPOSITION

The trial court's order granting in part and denying in part Local 39's first anti-SLAPP motion is affirmed to the extent that it granted the motion and reversed to the extent that it denied the motion.  The trial court is directed to enter a new order granting the motion in its entirety and striking Macy's original complaint.

BROWN, J.

I CONCUR:

GOLDMAN, J.

*Stationary Engineers Local 39 v. Macy's, Inc.* (A161959)

16

POLLAK, P.J. — I concur in the disposition of this appeal, but I do so with considerable misgivings. As a matter of common sense, it is virtually undeniable that, given the nature and duration of the challenged conduct, union leadership must have been aware of that conduct and took no steps to terminate it. Yet, as the majority opinion explains, Macy's presented absolutely no evidence that the illegal behavior (as opposed to the lawful picketing) was in fact brought to the attention of the leadership. Moreover, no formal attempt was made to obtain limited discovery to obtain such evidence. And although the union's brief in this court made this argument explicitly, Macy's reply simply ignores the issue. Therefore, while we can hardly be certain that trial would not disclose evidence that the union knew about and approved the disputed conduct, nothing was presented in opposition to the anti-SLAPP motion to demonstrate Macy's likelihood of prevailing on that issue at trial. For that reason alone, I concur.

POLLAK, P. J.

1

Trial Court:      San Francisco City & County Superior Court

Trial Judge:      Hon. Ethan P. Schulman

Counsel:      Weinberg, Roger & Rosenfeld, Gary P. Provencher and Andrea Matsuoka for Defendant and Appellant.

              Jackson Lewis, Gabriel N. Rubin and JaVon A. Payton for Plaintiff and Respondent.